A07A1037. PANHANDLE FIRE PROTECTION, INC. v. BATSON COOK COMPANY.
(653 SE2d 802)

BERNES, Judge.

Panhandle Fire Protection, Inc. appeals from the order and final judgment entered by the Superior Court of Troup County confirming an arbitration award in favor of Batson Cook Company ("BCC") and awarding BCC attorney fees under OCGA § 9-15-14. Panhandle

asserts that personal jurisdiction and venue were improper in Troup County. Additionally, Panhandle contends that the attorney fees award must be vacated because the superior court failed to make any findings of fact. For the following reasons, we vacate the superior court's order and final judgment, and we remand with instruction.

The record shows that BCC, a Georgia corporation, was the general contractor for a construction project located in Gulf Shores, Alabama. BCC entered into a subcontractor agreement with Panhandle, a Florida corporation, under which Panhandle agreed to install a fire sprinkler system as part of the construction project (the "Subcontractor Agreement"). BCC and Panhandle dispute over which version of the Subcontractor Agreement was assented to by the parties. According to BCC, the parties agreed to a version of the Subcontractor Agreement containing a choice of law clause which stated that the contract would "be governed by the law of the state of Georgia," as well as a Georgia choice of forum and arbitration clause which stated:

> AGREEMENT TO ARBITRATE: All claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.
>
> . . .
>
> The location of the arbitration proceedings shall be the city of [BCC's] headquarters or Atlanta, Georgia.

In contrast, Panhandle contends that the Subcontractor Agreement ultimately agreed to by the parties did not require arbitration in Georgia. According to Panhandle, the Subcontractor Agreement mutually assented to by the parties incorporated and made controlling an "Attachment X" which stated that "[a]ll or any legal disputes will be handle[d] in a Florida court."

In any event, Panhandle commenced work on the project. BCC apparently became dissatisfied with Panhandle's work and filed a demand for arbitration with the American Arbitration Association ("AAA"). BCC sought to recover expenses that it had incurred as a result of Panhandle's alleged breach of contract. Panhandle responded to the demand with several letters to the AAA in which it

denied the existence of a Georgia choice of forum and arbitration clause in the Subcontractor Agreement and objected to the arbitration.

The arbitrator subsequently issued an order finding that Panhandle was bound by the arbitration clause and that the Subcontractor Agreement unambiguously provided for the arbitration to be conducted in the city of BCC's headquarters or Atlanta, Georgia. Consequently, the AAA scheduled an arbitration hearing and notified both BCC and Panhandle. The arbitration hearing was conducted in Atlanta. Panhandle did not participate. The arbitrator found in favor of BCC and awarded it the monetary damages sought in its arbitration demand.

Thereafter, BCC filed a motion to confirm the arbitration award in the Superior Court of Troup County, the location of its principal place of business. Panhandle filed a motion to dismiss, arguing that the superior court lacked personal jurisdiction over Panhandle and contesting venue in that court. The superior court confirmed the arbitration award and found that BCC was entitled to recover attorney fees under OCGA § 9-15-14.

1. Panhandle maintains that personal jurisdiction and venue were improper in the Superior Court of Troup County. As discussed below, we conclude that the superior court's order and final judgment must be vacated, and the case remanded, because the jurisdictional issues raised by Panhandle cannot be resolved until the superior court first conducts a de novo examination of whether the parties agreed to arbitrate their dispute. That, in turn, will require the superior court to examine the competing versions of the Subcontractor Agreement and decide which version the parties ultimately gave their mutual assent.

(a) *The Subcontractor Agreement.* If BCC's version of the Subcontractor Agreement is correct, personal jurisdiction and venue are proper in Troup County. Under Georgia law, personal jurisdiction is conferred over a nonresident if the nonresident enters into a contract containing a Georgia choice of forum and arbitration clause. *Galindo v. Lanier Worldwide*, 241 Ga. App. 78, 81 (2) (b) (526 SE2d 141) (1999). Thus, if Panhandle entered into a Subcontractor Agreement providing for arbitration in Georgia to resolve disputes over the construction project, the superior court had personal jurisdiction over Panhandle. Id.

Likewise, venue in the Superior Court of Troup County would be proper pursuant to the Georgia Arbitration Code, OCGA § 9-9-1 et seq. ("GAC"), under BCC's version of the Subcontractor Agreement. Although Panhandle contends that the Federal Arbitration Act, 9 USC § 1 et seq., applies since the case involves interstate commerce,

the GAC controls because BCC's version of the Subcontractor Agreement contains a Georgia choice of law clause and an arbitration clause. *Southwire Co. v. American Arbitration Assn.*, 248 Ga. App. 226, 227 (1) (545 SE2d 681) (2001). Under the GAC, venue is proper, among other places, "[i]n the county where any party resides or does business." OCGA § 9-9-4 (b) (3). And, Panhandle did not dispute in the court below that if the GAC applies in this case, venue would be properly conferred upon the superior court based on OCGA § 9-9-4 (b) (3).[1]

In contrast, if Panhandle proves that the parties never agreed to the Georgia choice of forum and arbitration clause, personal jurisdiction and venue in the superior court would be improper. Panhandle is a Florida corporation, the project was located in Alabama, and the only other alleged contact between Panhandle and Georgia was the mailing of letters to the arbitrator by Panhandle's attorney objecting to the arbitration. "It is well settled under Georgia law that . . . mailing a response to [an] arbitration notice and . . . letter[s] to the arbitrator, standing alone, are not sufficient to confer personal jurisdiction." *Galindo*, 241 Ga. App. at 81 (2) (b). Furthermore, Panhandle asserts that the parties agreed to a forum selection clause requiring that all suits be brought in the Florida courts. If Panhandle proves its assertions, the superior court lacked jurisdiction to hear the motion to confirm the arbitration award.

(b) *The Arbitrator's Decision.* Here, the arbitrator ruled that BCC's version of the contract controlled and thus that the parties had agreed to arbitrate their dispute. That, however, does not resolve the matter. Under federal and Georgia arbitration law, the threshold question of whether parties to a contract agreed to arbitrate a dispute is normally a matter for a court, rather than an arbitrator, to decide. See *First Options of Chicago v. Kaplan*, 514 U. S. 938, 944-947 (II) (115 SC 1920, 131 LE2d 985) (1995); *Crawford v. Great American Cash Advance*, 284 Ga. App. 690, 692-693 (1) (644 SE2d 522) (2007); *Pickle v. Rayonier Forest Resources*, 282 Ga. App. 295, 296 (638 SE2d 344) (2006); *Galindo*, 241 Ga. App. at 82-83 (2) (b); *North Augusta Assoc. v. 1815 Exchange*, 220 Ga. App. 790, 793 (2) (469 SE2d 759) (1996). Absent clear and unmistakable evidence that the parties agreed to arbitrate the issue of arbitrability, a trial court reviewing an

---

[1] Citing to *Tampa Motel Mgmt. Co. v. Stratton of Fla.*, 186 Ga. App. 135, 138-139 (2) (366 SE2d 804) (1988), Panhandle appears to argue in its appellate brief that even if the GAC applies, venue would be improper in the superior court because the venue provisions of the Georgia Long Arm Statute, OCGA § 9-10-93, allegedly trump those of the GAC when one of the contracting parties is not a Georgia resident. Panhandle, however, has waived this argument on appeal by failing to raise it first in the superior court, and so we will not address it. See *Hall v. Ross*, 273 Ga. App. 811, 814, n. 12 (616 SE2d 145) (2005).

arbitration decision should independently determine whether the parties contractually agreed to the arbitration. *Galindo*, 241 Ga. App. at 83 (2) (b). Hence, unless there was clear and unmistakable evidence that BCC and Panhandle agreed to have the arbitrator resolve whether they had mutually assented to the arbitration clause, the superior court was charged with conducting its own independent examination of whether the parties had mutually assented to the clause.

Based on the record before us, BCC cannot show by clear and unmistakable evidence that the parties agreed to have the arbitrator resolve whether the version of the Subcontractor Agreement to which the parties mutually assented contained the arbitration clause. The record reflects that Panhandle consistently denied entering into the version of the Subcontractor Agreement containing the arbitration clause and refused to participate in the arbitration proceeding as a result. Moreover, it is clear that Panhandle did not agree to submit the question of arbitrability to the arbitrator merely by sending letters to the arbitrator objecting to the arbitration. See *First Options of Chicago*, 514 U. S. at 946 (II); *Galindo*, 241 Ga. App. at 83 (2) (b). Accordingly, we conclude that, prior to confirming the arbitrator's award, the superior court was required to perform an independent review of whether the parties mutually assented to the version of the Subcontractor Agreement containing the Georgia choice of forum and arbitration clause, and, therefore, agreed to arbitrate the dispute at issue.

(c) *The Superior Court's Decision.* Having reviewed the hearing conducted before the superior court and the order granting BCC's motion to confirm the arbitration award, we cannot discern whether the superior court conducted an independent review of the arbitrability issue or simply deferred to the arbitrator's decision on the issue. Consequently, we vacate the superior court's order and remand for the superior court to conduct an independent review of whether the parties agreed to arbitration. See *Galindo*, 241 Ga. App. at 83-84 (2) (b).[2] In so doing, the superior court should apply the standard state law principles of contract formation to determine which version of the Subcontractor Agreement was mutually assented to by the parties. See id. at 83 (2) (b). We further note that since the superior court is charged with examining the issue afresh and any arbitrator's decision on the issue carries no weight, it logically follows that the court

---

[2] Contrary to Panhandle's assertion, the fact that the arbitrator chose to rule on the arbitrability issue does not cause "the entire case for jurisdiction and venue in the Superior Court of Troup County [to] disintegrate[ ]." The arbitrator's ruling on the arbitrability issue has no effect at all, one way or the other, on the question of personal jurisdiction and venue, since that question is to be independently resolved by the superior court.

is not bound by the record before the arbitrator but instead may rely on documents submitted to the court in briefing by the parties, as well as documentary or testimonial evidence received as part of an evidentiary hearing the court may choose to conduct.

On remand, if the superior court finds that the parties mutually assented to the version of the Subcontractor Agreement containing the choice of forum and arbitration clause, personal jurisdiction and venue were proper in Troup County and the arbitrator's award may be confirmed. See Division 1 (a), supra. In contrast, if the superior court finds that the parties never agreed to the choice of forum and arbitration clause, instead assenting to the Florida forum selection clause contained in Attachment X, then personal jurisdiction and venue were improper, and BCC's motion to confirm must be dismissed. See *Galindo*, 241 Ga. App. at 84 (2) (b).

2. Panhandle next argues, and BCC concedes, that the superior court's order awarding attorney fees to BCC under OCGA § 9-15-14 failed to include the necessary findings of fact to support the award.

> When a trial court exercises its discretion in assessing attorney fees and costs of litigation under OCGA § 9-15-14, it is incumbent upon the court to specify the conduct upon which the award is made. A judgment devoid of such findings must be vacated and the case must be remanded for reconsideration.

(Citations omitted.) *McKemie v. City of Griffin*, 272 Ga. 843, 844-845 (4) (537 SE2d 66) (2000). Accordingly, we vacate the superior court's award of attorney fees. On remand, the superior court should reconsider the attorney fees issue and, if the court determines fees are warranted, it should "make express findings of fact and conclusions of law as to the statutory basis for any such award and the conduct which would authorize it." Id. at 845 (4).

*Judgment vacated and case remanded with instruction. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 1, 2007.

*David J. Merbaum*, for appellant.
*Glover & Davis, Taylor B. Drake*, for appellee.