### A10A0621. YATES v. CACV OF COLORADO, LLC.

(693 SE2d 629)

BLACKBURN, Presiding Judge.

Cynthia Yates appeals pro se from three separate orders of the trial court which: (i) confirmed an arbitration award entered against Yates and in favor of CACV of Colorado, LLC ("CACV") as successor in interest to Maryland Bank North America ("MBNA") (and thereby implicitly denied Yates's motion to vacate that award); (ii) entered judgment for CACV in the amount of the arbitration award against Yates; and (iii) denied Yates's counterclaim under the Fair Debt Collection Practices Act, 15 USCA § 1692 et seq. (the "FDCPA"). We find that CACV presented no evidence to establish the existence of an arbitration agreement, and that the trial court therefore erred in confirming the arbitration award and in entering an order of judgment against Yates. Because Yates's motion to vacate the arbitration award was untimely, however, we find no error by the trial court in denying that motion. Finally, because a counterclaim under the FDCPA could not be properly asserted in a proceeding to confirm an arbitration award, we find that the trial court erred in addressing Yates's counterclaim, rather than dismissing it. Accordingly, we reverse the trial court's orders confirming the arbitration award and entering judgment in favor of CACV; we affirm the trial court's denial of Yates's motion to vacate the arbitration award; and we vacate the trial court's order denying Yates's counterclaim. We remand the case for entry of an order dismissing Yates's counterclaim without prejudice.

"In reviewing a trial court's order confirming an arbitration award, this Court will affirm unless the trial court's ruling was clearly erroneous." (Punctuation omitted.) *Brookfield Country Club v. St. James-Brookfield, LLC*.[1] The question of whether a valid and enforceable arbitration agreement exists, however, represents a question of law, subject to de novo review. *Order Homes, LLC v. Iverson*.[2]

The record shows that this case arose out of Yates's alleged

---

[1] *Brookfield Country Club v. St. James-Brookfield, LLC*, 299 Ga. App. 614, 618 (1) (683 SE2d 40) (2009).

[2] *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 333 (685 SE2d 304) (2009).

default on her obligations under a credit card agreement with MBNA. MBNA assigned the debt to CACV, who then initiated two different arbitration claims against Yates in the National Arbitration Forum ("NAF"). The first arbitration claim ("Claim No. 1") was filed sometime in or before July 2005. The notice of claim sent to Yates by CACV, and all subsequent correspondence from and between the NAF, CACV, and Yates concerning this claim, referenced an MBNA account number ending in 9695, an NAF file number ending in 8268, and a "claimant [CACV] reference number" ending in 5326.

Yates responded to the notice of claim sent by NAF in Claim No. 1 via letter, dated August 13, 2005. In her response, Yates asserted, inter alia, that she had never agreed to arbitration. On August 18, 2005, NAF sent Yates a letter acknowledging her response, enclosing a copy of the "scheduling notice" for Claim No. 1, and instructing Yates to contact NAF for a "fee schedule." Shortly thereafter, on August 25, 2005, CACV filed a motion for a stay in Claim No. 1, stating that it was still in the process of obtaining the necessary documentary evidence from MBNA. That same day, NAF sent Yates a letter notifying her that Claim No. 1 had been stayed.

Over a year later, on October 13, 2006, CACV asked NAF to vacate the stay and proceed with the arbitration of Claim No. 1. CACV attached to its request exhibits that it asserted constituted the documentary evidence necessary to support Claim No. 1. On October 25, 2006, NAF sent Yates a letter notifying her that CACV had moved to lift the stay, and on October 27 CACV forwarded a copy of its request and the attached exhibits to Yates via UPS. Yates filed her response with NAF on November 29, 2006, seeking a dismissal of Claim No. 1 with prejudice on the grounds that the documents submitted by CACV failed to support that claim and again asserting that she had never agreed to arbitration. Specifically, Yates noted that the claim in question referenced an MBNA account number ending in 9695, while all the documents submitted by CACV referenced an MBNA account number ending in 8180; that CACV had failed to produce a copy of a signed application or other writing showing that Yates had entered into an agreement with MBNA or the terms of any such agreement; and that CACV had failed to demonstrate the existence of an arbitration agreement. In support of her arguments, Yates attached copies of the documents sent to her by CACV on October 27.

On December 5, 2006, NAF sent Yates a letter notifying her that an arbitrator had been appointed to hear Claim No. 1. Less than a week later, on December 11, 2006, NAF sent Yates a document "regarding CACV of Colorado, LLC v. Cynthia Yates" and captioned "Second Notice of Arbitration." This notice was in fact referring to a second claim ("Claim No. 2") that CACV had filed against Yates in

the NAF regarding her MBNA account.[3] Given that she had only previously received notice of arbitration with respect to Claim No. 1, Yates assumed this letter referred to that claim. She was somewhat confused, however, because this "Second Notice" referred to an NAF file number, a claimant (CACV) reference number, and a CACV (as opposed to an MBNA) account number that differed from the file, claimant reference, and MBNA account numbers that had been used in all previous correspondence regarding Claim No. 1.[4] In an attempt to obtain clarification, Yates made three phone calls to NAF between her receipt of the December 11 "Second Notice" and December 31, 2006; her calls were not returned. Instead, Yates received a letter from NAF, dated January 3, 2007, which referred to the file, reference, and account numbers for Claim No. 1 (which, to Yates's knowledge, was the only claim pending against her), and which stated that the arbitrator appointed to hear that claim had requested additional information from CACV. The letter further stated that such information, together with any additional information Yates wished to provide, was due no later than February 2, 2007.

After receiving that communication, Yates faxed a letter to NAF on January 9, 2007, asking them to confirm receipt of her November 29 correspondence and the documents she had attached thereto. Additionally, Yates's letter listed both file numbers and both claimant reference numbers used by NAF in their previous correspondence with her and asked for clarification as to whether there was, in fact, a second case; stated that if there was a second case, she had never received notice of it; and again reiterated that she had never agreed to arbitration of any claim against her. On January 11, Yates spoke on the telephone with an NAF case coordinator, who acknowledged receipt of Yates's January 9 fax and who stated that she was meeting with her supervisor to draft a letter to Yates.

On January 14, 2007, Yates received in the mail a written notice of an award entered by the arbitrator against her on Claim No. 2 in the amount of $13,135.32. Although both the award and the letter were dated January 8, 2007, and although the letter was signed by the same NAF case coordinator with whom Yates spoke on January 11, the case coordinator had failed to mention the award to Yates. Yates responded by letter dated January 15, 2007, in which she stated that she had never received notice of the filing of Claim No. 2 and that she had never agreed to arbitration of any claim against her. She therefore sought to have the arbitrator's award vacated.

---

[3] As best we can tell from the record, Claim No. 2 was filed on or about October 25, 2006.

[4] This "Second Notice" referred to an NAF file number ending in 6795, a claimant (CACV) account number ending in 3531, and a claimant reference number ending in 3235.

NAF subsequently sent Yates two letters, each of which was dated January 18 and each of which was signed by the same case coordinator with whom Yates had previously corresponded. The first letter referenced the file, account, and reference numbers for Claim No. 1, and acknowledged receipt of Yates's January 9 fax, stating: "As indicated to [Yates] in a phone call on January 11, 2007 that information was received by [NAF] and was included with the file documents mailed to the [a]rbitrator for review." The second letter referenced the file, account, and reference numbers for Claim No. 2, and stated that Yates's request for "reopening and reconsideration" of that claim "[could not] be processed as it was not accompanied by the $250.00 [f]ee as required by [NAF's] Code of Procedure."

Yates responded to NAF via letter dated January 29, stating, in part, that because she had never agreed to arbitrate her claim, she was unwilling to pay NAF any fees. She also reiterated her request for a copy of any "First Notice of Arbitration" allegedly served on her with respect to Claim No. 2. In its response dated February 9, 2007, NAF informed Yates that she would need to pay $31 to receive a complete copy of the file for Claim No. 2 or $14 for copies of the documentation CACV submitted in support of its claim. Yates never obtained any such copies, and CACV apparently elected not to file the same in the court below.

Yates's last correspondence from NAF came on February 19, 2007. On that date, NAF mailed her a copy of the arbitrator's award in Claim No. 1, which dismissed that claim with prejudice.

On September 10, 2007, CACV filed a petition to confirm the arbitration award for Claim No. 2 in Cobb County Superior Court. In its petition, CACV alleged that "pursuant to the terms and conditions of the credit agreement between [MBNA and Yates], the parties have contractually agreed to have any and all disputes reviewed by the [NAF] and that any resulting award may be entered as a judgment in any court having jurisdiction." CACV sought a judgment against Yates in the amount of the arbitrator's award ($13,135.32), plus costs and post-judgment interest. In support of its petition, CACV attached a copy of the arbitrator's award; it did not attach a copy of the alleged arbitration agreement.

Yates filed an answer, a motion to vacate the arbitrator's award, and a counterclaim against CACV for violation of the FDCPA. In her answer, Yates asserted that the petition should be dismissed based upon CACV's failure to attach thereto a copy of the alleged arbitration agreement. She sought to have the award vacated on the grounds that CACV had never served her with notice of the same and that she had never agreed to arbitration.

CACV thereafter filed an amended confirmation petition and a motion to strike Yates's counterclaim. In its amended petition, CACV

asserted that Yates was properly served with a First Notice of Arbitration with respect to Claim No. 2. The affidavit of service submitted in support of this assertion referenced the UPS package sent to Yates on October 27 and received by her on October 31, 2006. Rather than containing notice of Claim No. 2, however, the record shows that this package contained the documentation CACV had submitted in support of Claim No. 1, at the time it moved to have the stay lifted with respect to that claim.

Additionally, CACV attached to this pleading a photocopy of "Selected Sections" of an MBNA "Credit Card Agreement: Additional Terms and Conditions." That document was undated, was not attached to a credit application or other document signed by Yates, and was not supported by an affidavit authenticating the same. It contained a paragraph titled "Arbitration and Litigation," which provided, in relevant part:

> Any claim or dispute ("Claim") by either you or us against the other . . . arising from or relating in any way to this Agreement or any prior Agreement or your account . . . shall be resolved by binding arbitration. The arbitration shall be conducted by the [NAF] under the Code of Procedure in effect at the time the Claim is filed. . . . This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U. S. C. §§ 1-16 ("FAA"). Judgment upon any arbitration award may be entered in any court having jurisdiction.

Following a hearing that apparently was not transcribed, the trial court issued two separate orders on April 14, 2008. The first order stated: "Upon consideration of [CACV]'s Application to Confirm an Arbitration Award . . . it is ORDERED that the Arbitration Award in favor of [CACV] . . . plus costs of this action be CONFIRMED. . . ." The second order was an order of judgment in favor of CACV and against Yates in the principal amount of $13,135.32 plus $105 in costs. Yates appealed from these orders, but this Court dismissed the appeal as premature, noting the trial court's failure to consider or address Yates's counterclaim under the FDCPA and holding that "[i]n light of Yates's pending counterclaim, the trial court's judgment is interlocutory, and because Yates filed a direct appeal, we have no jurisdiction to consider the matter." (Punctuation omitted.) *Yates v. CACV of Colorado*.[5]

---

[5] *Yates v. CACV of Colorado*, 295 Ga. App. 69, 69 (670 SE2d 884) (2008).

On remand, the trial court held a "civil, non-jury hearing" and issued what it termed a "supplemental order" on September 2, 2009. The supplemental order stated that by issuing the two orders on April 14, 2008, the trial court had "effectively ruled against [Yates] on all allegations made by her. The Order[s] should have recited these findings as they were final orders resolving each and every pending issue in the matter."

Yates now appeals from both of the trial court orders entered on April 14, 2008 and the trial court order entered on September 2, 2009.

1. We find that the trial court erred in granting the petition to confirm the arbitration award.

Under both Georgia and federal law,

> [a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Therefore, the question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is undeniably an issue for judicial determination.

(Punctuation omitted.) *Pickle v. Rayonier Forest Resources*.[6] See also *Panhandle Fire Protection v. Batson Cook Co.*[7] Thus, "[w]here there is a specific challenge attacking the validity of an arbitration agreement, the court and not the arbitrator should decide whether the arbitration provision is enforceable." *Crawford v. Great American Cash Advance*.[8] In making this determination, the court applies state contract law, even in cases, such as this one, where the arbitration itself would be governed by the FAA. Id.

As the party seeking to enforce the alleged arbitration agreement, CACV bore the burden of proving the existence of such a valid and enforceable agreement. See *Life Care Centers of America v. Smith*;[9] *TranSouth Financial Corp. v. Rooks*.[10] The record before us shows unequivocally that CACV failed to meet this burden. The only evidence of an arbitration agreement was an undated, unauthenticated photocopy of certain "additional" terms and conditions of an MBNA credit agreement that CACV attached to its amended petition to confirm the arbitration award. There was no evidence, however,

---

[6] *Pickle v. Rayonier Forest Resources*, 282 Ga. App. 295, 296 (638 SE2d 344) (2006).

[7] *Panhandle Fire Protection v. Batson Cook Co.*, 288 Ga. App. 194, 197 (1) (b) (653 SE2d 802) (2007).

[8] *Crawford v. Great American Cash Advance*, 284 Ga. App. 690, 692-693 (1) (644 SE2d 522) (2007).

[9] *Life Care Centers of America v. Smith*, 298 Ga. App. 739, 741 (1) (681 SE2d 182) (2009).

[10] *TranSouth Financial Corp. v. Rooks*, 269 Ga. App. 321, 324 (1) (604 SE2d 562) (2004).

showing that Yates's contract with MBNA was governed by these provisions. Specifically, CACV did not submit a copy of any credit card application or agreement executed by Yates; nor did it submit an affidavit or other evidence showing the date Yates entered into a credit agreement with MBNA and that the photocopied terms and conditions represented the terms and conditions in effect for all MBNA credit agreements at that time.[11] Compare *Davis v. Discover Bank*;[12] *Roberson v. Ocwen Fed. Bank*.[13] Alternatively, CACV failed to offer any evidence showing that the original credit agreement between Yates and MBNA had been properly amended, the date of such amendment, that the attached terms and conditions reflected the amended agreement, that the amendments were sent to Yates, and that she accepted the same by continuing to use her MBNA credit card. Compare *Davis*, supra, 277 Ga. App. at 864-865.

Moreover, because it had purchased the debt from MBNA, CACV was required to submit not only documentary evidence of its assignment but also an affidavit authenticating such documents. See *Roberson*, supra, 250 Ga. App. at 351 (1) (a). See also *MBNA America Bank v. Straub*.[14] Here, CACV attached to its petition a photocopy of a document titled "Bill of Sale and Assignment of Loans" as evidence that it was the assignee of MBNA's rights under the bank's credit agreement with Yates. CACV, however, did not file a supporting affidavit authenticating that document. Furthermore, the alleged assignment stated that it was an assignment of MBNA's rights "to each of the Loans identified in the loan schedule ("Loan Schedule") attached hereto. . . ." The photocopied document submitted by CACV, however, did not have an attached Loan Schedule and therefore did not demonstrate that Yates's loan had been assigned to CACV.

Given this lack of evidence, CACV failed to meet its burden of proving a valid and enforceable arbitration agreement. See *Panhandle Fire Protection*, supra, 288 Ga. App. at 198 (1) (b); *Life Care Centers of America*, supra, 298 Ga. App. at 744 (1).

Finally, and despite its assertions to the contrary, CACV cannot rely on the arbitrator's finding that the parties had a valid arbitration agreement as evidence of such.[15] As noted earlier,

[a]bsent clear and unmistakable evidence that the parties

---

[11] In this regard, we note that any such affidavit would need to be sufficient to serve as the basis for admitting the business records of MBNA.

[12] *Davis v. Discover Bank*, 277 Ga. App. 864, 864-865 (627 SE2d 819) (2006).

[13] *Roberson v. Ocwen Fed. Bank*, 250 Ga. App. 350, 351 (1) (a) (553 SE2d 162) (2001).

[14] *MBNA America Bank v. Straub*, 815 NYS2d 450, 453-454 (N.Y. City Civ. Ct. 2006).

[15] We note that we have no way of knowing what evidence was presented to the arbitrator

agreed to arbitrate the issue of arbitrability, a trial court reviewing an arbitration decision should independently determine whether the parties contractually agreed to the arbitration. Hence, [given the lack of] clear and unmistakable evidence that [Yates and CACV] agreed to have the arbitrator resolve whether they had mutually assented to the arbitration clause, the superior court was charged with conducting its own independent examination of whether the parties had mutually assented to the clause.

(Citation omitted.) *Panhandle Fire Protection*, supra, 288 Ga. App. at 197-198 (1) (b). In any given case, therefore, whether a particular dispute is arbitrable is a question for the court, and deference need not be given to the arbitrator's decision.

CACV attempts to avoid the deficiencies in its evidence by asserting that Yates failed to challenge the arbitration award in a timely fashion. The FAA requires that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 USCA § 12.

The question raised by this argument is whether CACV can rely on Yates's tardiness in moving to vacate the award to bar her from asserting a lack of an arbitration agreement as a defense to a petition to confirm that award. Although Georgia courts have never addressed this issue, we agree with those jurisdictions holding that a party who did not otherwise consent to the arbitration of a claim, via active participation or otherwise, may raise the absence of an arbitration agreement as a defense in confirmation proceedings. See *MBNA America Bank v. Christianson*;[16] *MBNA America Bank v. Credit*;[17] *MBNA America Bank v. Boata*.[18]

The assertion of this defense does not constitute a motion to vacate, modify or correct an award. Thus, it is not subject to the 90-day time limitation found in section 12 of the FAA. 9 USCA § 12. Rather, a claim that a contract dispute is not subject to arbitration constitutes an attack on the subject matter jurisdiction of the arbitrator. See *Threatt v. Forsyth County*.[19] See also *Christianson*,

---

to establish the existence of an arbitration agreement, because the documents CACV submitted in support of Claim No. 2 were not served on Yates, NAF refused to provide Yates with copies of those documents unless she paid a fee, and CACV failed to file any such documents in the trial court.

[16] *MBNA America Bank v. Christianson*, 659 SE2d 209, 212 (S.C. App. 2008).

[17] *MBNA America Bank v. Credit*, 132 P3d 898, 901 (Kan. 2006).

[18] *MBNA America Bank v. Boata*, 893 A2d 479, 483 (Conn. App. 2006), aff'd, 926 A2d 1035 (Conn. 2007).

[19] *Threatt v. Forsyth County*, 250 Ga. App. 838, 841 (1) (b) (552 SE2d 123) (2001).

supra, 659 SE2d at 212; *Credit*, supra, 132 P3d at 901. "[A]s such, [it] may be raised at any time prior to a final court judgment. . . . The final judgment in an arbitration proceeding is ordinarily an order of the trial court modifying, vacating or confirming the arbitrator's award." (Citations and punctuation omitted.) *Boata*, supra, 893 A2d at 483. Cf. OCGA § 9-9-15.

2. By granting the petition to confirm the award, the trial court implicitly denied Yates's motion to vacate. Given Yates's failure to file a motion to vacate the award within three months after receiving delivery of it, we find no error in the trial court's ruling and therefore affirm the same.[20] See 9 USCA § 12.

3. Because a petition to confirm an arbitration award is a special statutory proceeding, as opposed to a civil action, counterclaims are generally not permitted. *Booth v. Hume Publishing*.[21] Cf. *Hardin Constr. Group v. Fuller Enterprises*[22] ("[A]n application for confirmation is *not* a complaint which initiates a civil action in the superior court. It is not a civil suit in the ordinary meaning of that term.") (punctuation omitted; emphasis in original). The only exception to this rule is where the counterclaim relates to those defenses permitted under sections 10 and 11 of the FAA (9 USCA §§ 10, 11) — i.e., where the counterclaim seeks the modification or vacation of the arbitration award. *Booth*, supra, 902 F2d at 931 (D). Accordingly, the trial court erred to the extent it considered the merits of Yates's counterclaim under the FDCPA. Rather than denying that claim, the trial court should have dismissed it without prejudice.

For the reasons set forth above, we reverse the April 14, 2008 order of the trial court confirming the arbitration award, but affirm the trial court's implicit denial of Yates's motion to vacate that award; we reverse the April 14, 2008 order entering judgment against Yates and in favor of CACV; and we vacate the September 2, 2009 order denying Yates's counterclaim under the FDCPA, and remand the case for entry of an order dismissing that claim without prejudice.

*Judgment affirmed in part, reversed in part, and vacated and remanded in part. Barnes and Bernes, JJ., concur.*

DECIDED APRIL 6, 2010.

Cynthia Yates, *pro se*.

---

[20] We note, however, that our holding that CACV is not entitled to confirm the award is res judicata, and would operate to bar CACV from bringing a subsequent confirmation petition. Thus, even though the award stands, our holding means that it is unenforceable.

[21] *Booth v. Hume Publishing*, 902 F2d 925, 930-931 (D) (11th Cir. 1990).

[22] *Hardin Constr. Group v. Fuller Enterprises*, 265 Ga. 770, 771 (462 SE2d 130) (1995).