**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 5, 2022**

# In the Court of Appeals of Georgia

A22A0094. C.R. OF THOMASVILLE, LLC et al. v. HANNAFORD et al.

PHIPPS, Senior Appellate Judge.

The defendants in this medical malpractice and wrongful death action appeal from the trial court's order denying their motion to dismiss, or, alternatively, to stay proceedings and compel arbitration, following our grant of their application for interlocutory review.[1] See *C.R. of Thomasville v. Hannaford*, Case No. A21I0176 (Apr. 22, 2021). The defendants contend, in relevant part, that the trial court misapplied our decision in *Triad Health Mgmt. of Ga., III v. Johnson*, 298 Ga. App. 204 (679 SE2d 785) (2009), when it ruled that the decedent is not bound by her

---

[1] The named defendants are: C.R. of Thomasville, LLC, operating as Thomasville Health and Rehab; C. Ross Management, LLC; and Michael Eugene Winget, Sr.

husband's signatures on the arbitration agreement at issue here. For the reasons that follow, we disagree and affirm.

The record shows that, in 1996, Judy Hannaford executed a power of attorney ("POA") appointing her husband, plaintiff Leo Hannaford, as her attorney-in-fact. Among other things, the POA authorized Leo "to sign [Judy] in or out of any hospital or nursing home." Judy was admitted to a skilled nursing facility run by the defendants in March 2017, at which time Leo signed a Nursing Home Admission Agreement (the "Agreement") among the facility, Judy as "Resident," and Leo as "Responsible Party." The Agreement provides, in relevant part, that "[a]ny and all claims, controversies, [or] disputes . . . arising out of or in any [way] relating to [the] Agreement . . . shall be resolved exclusively by binding arbitration." Leo printed and signed his own name in the Agreement's spaces designated for the printed names and signatures of both the "Resident" and the "Resident's Representative."[2] Below Leo's signature, the pre-printed Agreement form contains several options under both "Legal

_____

[2] While the pre-printed Agreement form appears to have been designed with the intent that printed and signed names be added above the "Resident" and "Resident's Representative" designations, Leo printed and signed his name below those designations. We assume, for purposes of this appeal, that Leo intended to print and sign his name as both "Resident" and "Resident's Representative."

Representative" and "Responsible Party."[3] The option designated "Spouse" under the heading "Responsible Party" was checked; none of the options under the heading "Legal Representative" — including "Agent under a . . . Power of Attorney" — was selected. It appears to be undisputed that the defendants did not know of Judy's POA when Leo signed the Agreement.

Judy died in 2019. In 2020, Leo, individually and as Judy's surviving spouse and executor of her estate, sued the defendants, seeking damages for injuries Judy sustained while she was a resident at the nursing facility, for her subsequent death, for violations of Georgia's Bill of Rights for Residents of Long-term Care Facilities, OCGA § 31-8-100 et seq., and for loss of consortium. Citing the Agreement's arbitration provision and the POA, the defendants moved to dismiss the complaint, or, alternatively, to stay the proceedings and compel arbitration. The trial court denied the motion on grounds that: (i) Leo signed the Agreement as Judy's spouse and not pursuant to the POA; (ii) the defendants failed to establish that Judy knew of the arbitration agreement or authorized Leo to agree to arbitrate the claims at issue here;

---

[3] The Agreement defines (i) "Legal Representative" as "any person with the legal authority to act on behalf of an incompetent or incapacitated patient (e.g., a legal guardian or agent with power of attorney)"; and (ii) "Responsible Party" as "a family member or other person interested in the Resident's welfare who undertakes certain responsibilities in connection with the Resident's stay at the Facility."

and (iii) regardless, under OCGA § 9-9-62, the arbitration agreement is unenforceable as to claims for malpractice based on acts that occurred after Leo signed it. This interlocutory appeal followed.

We review de novo a trial court's order granting or denying a motion to compel arbitration. *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 117 (1) (746 SE2d 680) (2013); see *Yates v. CACV of Colorado*, 303 Ga. App. 425, 425 (693 SE2d 629) (2010) ("The question of whether a valid and enforceable arbitration agreement exists . . . represents a question of law, subject to de novo review."). The factual findings on which the ruling is based, however, will not be overturned unless clearly erroneous. See *Ed Voyles Jeep-Chrysler v. Wahls*, 294 Ga. App. 876, 877 (670 SE2d 540) (2008). The party seeking arbitration bears the burden of proving the existence of a valid and enforceable agreement to arbitrate. *Triad Health*, 298 Ga. App. at 206 (2); see *Yates*, 303 Ga. App. at 430 (1).

"Under both Georgia and federal law, arbitration is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute which [she] has not agreed so to submit." *Yates*, 303 Ga. App. at 430 (1); accord *Emory Healthcare v. Farrell*, 359 Ga. App. 621, 624 (859 SE2d 576) (2021). Thus, "[w]hether there is a valid agreement to arbitrate is generally governed by state law principles of contract

4

formation, and is appropriate for determination by the court," *Triad Health*, 298 Ga. App. at 206 (2), even where the agreement at issue states that it is to be governed by the Federal Arbitration Act ("FAA"), see *Yates*, 303 Ga. App. at 430 (1). A contract requires a meeting of the minds to render it valid and binding. *USA Mfg. Corp. v. Perfection-Schwank, Inc.*, 271 Ga. App. 636, 638 (1) (610 SE2d 600) (2005) ("[O]ne of the essential requirements of a valid contract is the assent of the parties to the terms of the contract.") (citation and punctuation omitted); accord OCGA § 13-3-1. Thus, "the cardinal rule of contract construction is to ascertain the intent of the parties, as evidenced by the language of the contract." *Miller*, 323 Ga. App. at 118 (2). In that vein, "an individual who has not consented to an arbitration agreement cannot be compelled to arbitrate claims." *Helms v. Franklin Builders*, 305 Ga. App. 863, 865 (700 SE2d 609) (2010); accord *Wedemeyer v. Gulfstream Aerospace Corp.*, 324 Ga. App. 47, 49 (1) (749 SE2d 241) (2013) ("Arbitration is a matter of consent, not coercion . . . .") (citation and punctuation omitted).

1. We first address the defendants' argument that the trial court misapplied our decision in *Triad Health*, 298 Ga. App. 204, when it ruled that Judy is not bound by Leo's signatures on the Agreement. We affirm the trial court's ruling on this issue.

5

In *Triad Health*, the plaintiff sued several defendants for nursing home negligence that allegedly led to his father's hospitalization, illness, and death. 298 Ga. App. at 204-205. The defendants moved to compel arbitration based on an arbitration agreement in an "Admission Contract" that the plaintiff signed as his father's "Fiduciary Party" when the father entered the nursing home. Id. at 205. Below the signature lines, the contract listed "11 boxes corresponding to various capacities in which the fiduciary might be representing the patient, such as guardian, attorney-in-fact, and trustee, among others." Id. at 207 (2). The only box checked was "immediate family member." Id. This Court reversed the trial court's denial of the motion to compel arbitration on grounds that, as relevant here: (i) the decedent had executed a general POA in favor of the plaintiff that was in effect when the plaintiff signed the Admission Contract; and (ii) the plaintiff's execution of the Admission Contract on behalf of his father was "necessary, requisite or proper," within the scope of the POA, and the father therefore was bound thereby. Id. at 207-208 (2) (punctuation omitted).

Here, Judy's POA gave Leo the authority: (i) "[t]o contract for the performance of services" for her; (ii) "to sign [her] in or out of any hospital or nursing home"; and (iii) "to do and perform all and every act and thing whatsoever requisite, necessary and proper to be done in and about the premises, as fully, to all intents and purposes,

6

as [she] might or could do, if personally present, . . . [t]hereby ratifying and confirming all that [her] said attorney . . . shall lawfully do, or cause to be done," by virtue of the POA. While some of the above language resembles the language of the POA in *Triad Health*, see 298 Ga. App. at 207 (2), there are two key distinctions between the facts in *Triad Health* and the case before us.

First, the admission agreement in *Triad Health* expressly identified the plaintiff as a "Fiduciary Party." 298 Ga. App. at 205. And the relationship of an agent to his principal is fiduciary in nature. *Koch v. Cochran*, 251 Ga. 559, 560 (307 SE2d 918) (1983); see *Wright v. Apartment Investment & Mgmt. Co.*, 315 Ga. App. 587, 592 (2) (a) (726 SE2d 779) (2012) ("Where an agency relationship exists, the agent has a fiduciary duty to his principal."); Black's Law Dictionary 770 (11th ed. 2019) (defining "fiduciary," in relevant part, as "[s]omeone who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, loyalty, due care, and disclosure"). Thus, the plaintiff's signature on the admission agreement as a "fiduciary" in *Triad Health* constituted evidence that he was affirmatively exercising his authority under the decedent's POA. Here, however, Leo signed the Agreement not as a fiduciary — and not even as a "Legal Representative" — but rather only as the "Spouse" and

7

"Responsible Party," which weighs against treating his signature as having been made pursuant to the POA. See generally *Ashburn Health Care Center v. Poole*, 286 Ga. App. 24, 26-27 (648 SE2d 430) (2007) (the mere fact that one spouse signed an arbitration agreement as an "authorized representative" of the other spouse, without more, cannot establish agency). And on the facts of this case, ignoring Leo's express decision to choose those options and reject the contractual options to sign as "Legal Representative" and/or "Agent under a . . . Power of Attorney" would risk "run[ning] afoul of Georgia law, which requires us to give meaning to every term of a contract rather than construe any term as meaningless." *Emory Healthcare*, 359 Ga. App. at 627 (citation and punctuation omitted).

Second, the decedent in *Triad Health* was incapacitated when the plaintiff signed the admission agreement. 298 Ga. App. at 207 (2). And we observed in *Triad Health* that the decedent's incapacitation was one of the circumstances of the transaction showing that the plaintiff's execution of the admission agreement was "necessary, requisite or proper, within the scope of the agency contemplated by" the POA. Id. (punctuation omitted). Here, however, neither party has identified any record evidence suggesting that Judy was incapacitated or otherwise unable to review

8

and accept or reject the Agreement when Leo signed it.[4] Thus, the reasoning in *Triad Health* — in which entering into the arbitration agreement was "necessary, requisite or proper" within the scope of the POA while the decedent was incapacitated — does not apply here. See id. (punctuation omitted); cf. *Ashburn Health Care Center*, 286 Ga. App. at 26-27 (affirming the denial of a motion to compel arbitration on grounds that, inter alia, there was no evidence that the decedent "knew about the arbitration agreement, authorized her husband to sign the document, or otherwise agreed to arbitrate claims arising out of her nursing home stay"). Put another way, there is no evidence here that Leo's act of signing his own name to the Agreement was "requisite, *necessary* and proper" under the POA.[5] (Emphasis supplied.) To the

---

[4] In that vein, neither party identifies any record evidence shedding any light on why Leo (rather than Judy) signed the Agreement. Nevertheless, the fact that Leo rejected the option to sign as "Legal Representative" — which the Agreement defines as a person with "legal authority to act on behalf of an *incompetent or incapacitated* patient" — constitutes some evidence that Judy was not incapacitated when Leo signed the Agreement. (Emphasis supplied.) To the extent that any additional evidence potentially could support a contrary finding that Leo was affirmatively exercising his authority under the POA at that time, it was incumbent on the defendants — who bear the burden of establishing an enforceable arbitration agreement — to present such evidence to the trial court. See *Yates*, 303 Ga. App. at 430 (1); *Triad Health*, 298 Ga. App. at 206 (2).

[5] The fact that Leo printed and signed his own name (rather than Judy's name) in the spaces designated for "Resident" does nothing to help the defendants meet their burden, as it sheds no light one way or another on whether, by doing so, Leo intended to exercise his authority to unilaterally act on Judy's behalf pursuant to the POA, as opposed to merely

9

contrary, Leo attested in an affidavit that he did not sign the Agreement pursuant to the POA (which suggests that Judy was not incapacitated at the time). See *Extremity Healthcare v. Access to Care America*, 339 Ga. App. 246, 254 (1) (793 SE2d 529) (2016) (while parol, or extrinsic, evidence "cannot be used to contradict or vary the terms of a valid written agreement," it "may be used to show," as here, that no such agreement existed).[6]

Importantly, the parties have not cited, and we have not found, any Georgia appellate decisions standing for the proposition that the mere existence of a POA, without more, is determinative as to whether the person in whom the POA rests binds his principal merely by signing his own name to an agreement to which the principal

---

acting on Judy's behalf as her spouse, as indicated by his selection of "Spouse" (and rejection of "Agent under a . . . Power of Attorney") immediately below his signatures. Thus, even to say that Leo signed the Agreement "on Judy's behalf" begs the question as to the capacity in which he was acting when he did so. And because the answer to that question — at best — is unclear on the particular facts of this case, the defendants have not met their burden of showing that Leo was affirmatively exercising his authority under the POA when he signed the Agreement. See *Yates*, 303 Ga. App. at 430 (1); *Triad Health*, 298 Ga. App. at 206 (2); see also generally note 2, above.

[6] Indeed, the defendants' entire argument is premised on evidence extrinsic to the Agreement: the POA. We therefore reject the argument in their reply brief that parol evidence is inadmissible under the facts of this case. See *Extremity Healthcare*, 339 Ga. App. at 254 (1).

10

is a party.[7] Given the important distinctions between the current case and *Triad Health*, we now hold that the existence of a POA between spouses, standing alone, is insufficient to bind the principal under the facts of this case. Rather, there must be some evidence that the agent was intentionally or affirmatively exercising his authority under the POA for the principal to be bound. See generally *Miller*, 323 Ga. App. at 118 (2) ("the cardinal rule of contract construction is to ascertain the intent of the parties"); cf. OCGA § 10-6B-13 ("Except as otherwise provided in the power of attorney, a person accepts appointment as an agent under a power of attorney by *exercising authority or performing duties as an agent or by any other assertion or conduct indicating acceptance*.") (emphasis supplied). As in *Triad Health*, such evidence may be found in (a) the express designation of the agent as a fiduciary on

---

[7] The fact that the POA identified admission to a nursing home as one of the numerous acts authorized in the POA also adds nothing to our analysis, as it similarly sheds no light on whether Leo intended to affirmatively exercise that authority when he signed his own name to the Agreement. More importantly, it does nothing to help the defendants meet their appellate burden — as the parties challenging the trial court's ruling — of establishing that the trial court clearly erred when it determined that they did not satisfy their initial burden of showing that, when Leo signed his own name to the Agreement, he was affirmatively exercising his authority under the POA to unilaterally obtain Judy's admission to the defendant's facility. See *Yates*, 303 Ga. App. at 430 (1); *Triad Health*, 298 Ga. App. at 206 (2); *Ed Voyles Jeep-Chrysler*, 294 Ga. App. at 877; see also *Tolbert v. Toole*, 296 Ga. 357, 363 (3) (767 SE2d 24) (2014) ("It is [the appellant]'s burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal.").

11

the face of the agreement at issue and (b) the principal's incapacitation at the time the agreement is executed, thereby necessitating the exercise of one's authority as attorney-in-fact for another.

In that regard, the defendants highlight an Agreement provision that appears two pages before Leo's signatures and states:

> If this Agreement is executed by the Resident's Representative, that individual agrees that he or she is signing both as Representative and in his or her own capacity, and further warrants and represents that the Resident has expressly vested in the Representative the authority to act on the Resident's behalf in the Resident's financial, health-related, contractual, and other affairs and as such is the Resident's authorized agent with respect to the execution of this Agreement.

To the extent that this general provision arguably may be read to contradict the more specific terms of Leo's express election to sign his own name as "Spouse" and his rejection of the options to sign as "Legal Representative" and/or "Agent under a . . . Power of Attorney," we construe any potential ambiguity in this regard — as the trial court appears to have done — against the defendants as drafters of the Agreement.[8] See OCGA § 13-2-2 (5) ("If the construction [of a contract] is doubtful, that which

---

[8] See notes 3 and 4, above (addressing the Agreement's definition of "Legal Representative").

goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred."); *Eagle Jets v. Atlanta Jet*, 347 Ga. App. 567, 572 (2) (a) (820 SE2d 197) (2018) (ambiguities in a contract are "resolved most strongly against the drafter"); see also *Holland v. Holland*, 287 Ga. 866, 868 (1) (700 SE2d 573) (2010) ("In construing contracts, a specific provision will prevail over a general one.").

Absent evidence that Leo was intentionally or affirmatively exercising his authority under the POA — and given the evidence to the contrary on the face of the Agreement and in Leo's affidavit — the trial court did not err when it concluded that the defendants did not meet their burden of showing that Leo intended to act pursuant to the POA when he signed the Agreement, so as to bind Judy to the arbitration provision. As a result, the trial court therefore also did not err when it (a) concluded that the defendants did not meet their burden of establishing an enforceable agreement to arbitrate and (b) denied the defendants' motion to dismiss, or, in the alternative, to stay the proceedings and compel arbitration on that basis. We therefore affirm the trial court's ruling in this regard.

2. Given our ruling in Division 1, we need not address the defendants' contention that the arbitration agreement is subject to the FAA. Even if that is the

case, it nevertheless remains subject to state law contract formation principles, as applied in our analysis in Division 1. See *Yates*, 303 Ga. App. at 430 (1); *Triad Health*, 298 Ga. App. at 206 (2).

3. Our ruling in Division 1 likewise makes it unnecessary to address the defendants' challenge to the trial court's alternative conclusion that the arbitration agreement here is rendered unenforceable as to Leo's malpractice claims by OCGA § 9-9-62, an issue on which we express no opinion.

4. Finally, given our ruling in Division 1, we similarly express no opinion on Leo's contention that the agreement to arbitrate is void as unconscionable, an issue the trial court did not reach.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*