**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 2, 2016**

# In the Court of Appeals of Georgia

| | |
|---|---|
| A16A1200. RUEMKER v. RUEMKER. | DO-046 |
| A16A1201. RUEMKER v. RUEMKER. | DO-047 |
| A16A1202. STANLEY v. RUEMKER. | DO-048 |
| A16A1203. STANLEY v. RUEMKER. | DO-049 |

DOYLE, Chief Judge.

Krystal D. Ruemker a/k/a Krystal D. Stanley ("mother") and Raymond Ruemker ("father"), the biological parents of Leah Ruemker ("ward"), an incapacitated adult, are seeking appointment as her guardian and conservator.[1] On December 21, 2015, the trial court entered an order requiring the mother and her husband, Gregory Stanley ("stepfather"), to appear in court the following morning and produce the ward for travel as directed by the emergency guardian appointed for

---

[1] The ward, who was born on March 6, 1994, is developmentally disabled, and it is undisputed that she is in need of a guardian.

the pendency of the case. The mother and stepfather failed to appear for the hearing, and on December 22, 2015, the trial court entered an order requiring their immediate incarceration. In Case No. A16A1200, the mother appeals the superior court's December 21, 2015 order; in Case No. A16A1201, the mother appeals the court's December 22, 2015 order; in Case No. A16A1202, the stepfather appeals the court's December 21, 2015 order; and in Case No. A16A1203, the stepfather appeals the court's December 22, 2015 order. We have consolidated these cases on appeal, and for the reasons that follow, we dismiss all four appeals.

Pursuant to a May 2010 Missouri family court order, the parents had joint physical and legal custody of the ward.[2] On February 22, 2012, shortly before the ward's eighteenth birthday, the mother filed a guardianship petition in the Houston County Probate court, and the father objected. The probate court appointed the parents as co-guardians and established a visitation schedule; the mother appealed that order to the Superior Court of Houston County.

While the guardianship case proceeded, the superior court appointed an emergency guardian of the ward pursuant to OCGA §§ 29-4-70 (d) and 29-4-16.

---

[2] The father lives in Missouri and the mother lives with the ward in Houston County, Georgia.

2

Following a jury trial, the court entered a final judgment appointing the parents as co-guardians and establishing alternating periods of visitation and domicile in accordance with the verdict. The mother filed a motion for new trial, and in November 2015, the court granted the motion because the ward was not represented by counsel at trial. On October 6, 2015, the superior court entered an order reappointing the same emergency guardian, giving the mother physical custody, and granting the father visitation as directed by the emergency guardian.[3]

On December 21, 2015, the father filed a motion to show cause alleging that he arrived at the mother's home on December 18, 2015, to retrieve the ward for his holiday visitation as directed by the emergency guardian. According to the father, the mother was home but refused to come to the door, and she ignored his attempts to schedule a time to pick up the ward the following day. On December 21, 2015, the superior court entered an order directing the mother and stepfather to appear in court the following day at 9:00 a.m. and produce the ward, along with her clothing and belongings for travel to Missouri with the father. The order stated that "[f]ailure to

_____

[3] In the order reappointing the guardian, the court noted that it had considered the affidavit of a physician, the deposition of a neuropsychologist, the parties' stipulation that the ward was in need of a guardian, and the parties' and witnesses' testimony at trial.

appear or to produce [the ward] shall result in an immediate order for incarceration of [the mother and stepfather]," and it scheduled a December 28, 2015 hearing to address whether the mother and stepfather should be held in contempt for their alleged failure to comply with the visitation directed by the emergency guardian.

On December 22, 2015, the mother and the stepfather filed separate notices of appeal of the December 21, 2015 order. Also on December 22, 2015, the superior court entered an order finding that the mother and stepfather had failed to appear as ordered in the preceding show cause order and directing that the mother and stepfather "be found and immediately incarcerated for failing to produce the ward. . . ."[4] The stepfather appeared before the trial court that same day, and he explained that the sheriff had picked him up from his home that morning. He was not permitted to take his cell phone with him, and he could not recall any of the mother's phone numbers; the stepfather assured the court, however, that he would assist in locating the mother. That same day – December 22, 2015 – the trial court issued an order stating that the stepfather

---

[4] The superior court also concluded that the mother's and stepfather's notices of appeal of the December 21, 2015 order were meritless and failed to divest the court of jurisdiction because the show cause order "in no way [found] the parties in contempt."

4

shall be released to a member of the investigation division of the Houston County Sheriff's Office. Said officer will transport [the stepfather] to his home where he will attempt to locate [the mother] and [the ward]. He will be released from custody on his own recognizance upon his good faith effort to assist law enforcement in locating [the ward]."

The stepfather was released from jail that same day.

Both the mother and stepfather filed notices of appeal of the December 22, 2015 order.[5] On December 28, 2015, the Superior Court of Houston County entered a kidnapping warrant for the mother, who was arrested on January 5, 2016, in Texas; she was later released from jail. Also on December 28, 2015, the trial court entered an order directing the mother and stepfather to appear before the court on January 14, 2016 "to show cause why they should not be held in contempt and confined to . . . [j]ail for their failure to comply with the [c]ourt's order to release the ward to her father's care on Friday, December 18, 2015." On January 19, 2016, the superior court in the instant case entered an order titled "ORDER DISMISSING CONTEMPT AND

---

[5] Thereafter, on January 6, 2016, the trial court entered a third emergency order of guardianship, reappointing the same guardian again and vesting her with decision-making authority regarding visitation, noting that the appointment met the statutory criteria set forth in OCGA §§ 29-4-70 and 29-4-16.

5

DENYING RAY REU[M]KER'S MOTION TO SHOW CAUSE." Therein, after concluding that "there is no further action that the [c]ourt can take to ensure compliance with its December 21, 2015 and December 22, 2015 Orders" and noting that the ward was currently residing with the father, the court dismissed its "prior [o]rders finding [the mother and stepfather] in contempt."

*Case No. A16A1200*

1. The mother appeals the superior court's December 21, 2015 show cause order. We do not have jurisdiction to consider this appeal.

"Two Code sections determine the method for pursuing appeals to this Court: OCGA § 5-6-34, which describes the trial court's judgments and orders that may be appealed directly, and OCGA § 5-6-35, which lists cases in which an application for appeal is required."[6] OCGA § 5-6-34 (a) (11) provides a right of direct appeal from "[a]ll judgments or orders in child custody cases awarding, refusing to change, or modifying child custody or holding or declining to hold persons in contempt of such

---

[6] *Collins v. Davis*, 318 Ga. App. 265, 266 (1) (733 SE2d 798) (2012).

6

child custody judgment or orders."[7] OCGA § 5-6-34 (a) (2) provides that a direct appeal may be taken from "contempt cases."

Here, the superior court's December 21, 2015 show cause order did not include any decision as to custody, nor did it hold or decline to hold any party in contempt of a child custody or any other order. Thus, it is an interlocutory ruling and not directly appealable.[8] Accordingly, this appeal is dismissed.[9]

_____

[7] OCGA § 5-6-34 (a) (11). This Court has applied this Code section to a guardianship case involving custody of a 19-year-old woman requiring care and supervision for her life. See *Brabant v. Patton*, 315 Ga. App. 711, 712-713 (728 SE2d 244) (2012).

[8] See OCGA § 5-6-34 (a) (11); *Hulsey v. Smith*, 223 Ga. 522 (156 SE2d 353) (1967) ("a rule nisi ordering the appellant to show cause" is not a final judgment); *Barfield v. Butterworth*, 323 Ga. App. 156, 157 (1) (746 SE2d 819) (2013) (physical precedent only) (because "the trial court's order is not an order 'awarding, refusing to change, or modifying child custody or holding or declining to hold persons in contempt' of such an order, it is not subject to direct appeal"); *Fagala v. Morrison*, 161 Ga. App. 655, 656 (2) (289 SE2d 528) (1982) ("the order requiring the appellant's attorney to show cause is not subject to direct appeal because it is not final").

[9] We note that in this appeal (as in the other three appeals), the appellant challenges the trial court's appointment of the emergency guardian and, in doing so, vesting her with decision-making authority regarding visitation, arguing that the trial court failed to ensure compliance with certain statutory requirements including OCGA §§ 29-4-14 (d); 29-4-15 (c) (3); 29-4-16; and 29-4-70 (d). But OCGA § 29-4-70 (d), which permits the appointment of an emergency guardian for a ward pending the appeal of a probate court's final order to superior court, specifically provides that "[t]he appointment of an emergency guardian is not appealable."

7

2. We also dismiss the mother's appeal of the December 22, 2015 order. This case is not directly appealable under OCGA § 5-6-34 (a) (11) because the December 22, 2015 order did not include a decision as to custody, nor did it hold or decline to hold any party in contempt of a custody order. The mother, however, argues that the order constituted a contempt order pursuant to OCGA § 15-6-8 (5)[10] and was therefore directly appealable under OCGA § 5-6-34 (a) (2).[11] The father, in contrast, argues that the order was analogous to a bench warrant, the primary purpose of which "is to secure the presence of the defendant in court. [And o]nce the defendant appears in court, the bench warrant is no longer necessary and has no force and effect."[12] In

---

[10] See *American Med. Security Group, Inc. v. Parker*, 284 Ga. 102, 104 (5) (663 SE2d 697) (2008) ("criminal contempt imposes unconditional punishment for prior acts of contumacy"); OCGA § 15-6-8 (5) (limiting a superior court's power to impose fines not exceeding $1,000 or imprisonment not exceeding 20 days for contempt).

[11] OCGA § 5-6-34 (a) (2) provides a right of direct appeal from judgments "involving . . . contempt cases."

[12] (Punctuation omitted.) *Allen v. State*, 244 Ga. App. 377, 379 (535 SE2d 347) (2000), quoting *State v. Stringer*, 258 Ga. 605 (372 SE2d 426) (1988). See also *Martin v. Waters*, 151 Ga. App. 149, 150 (2) (259 SE2d 153) (1979) (explaining that "the normal procedure when a party or witness who has been ordered to appear does not do so is to arrest [her] under a bench warrant at which time the cause of the delay can be inquired into" and that sentencing the party to 20 days in jail without holding

considering this argument, we recognize that "the appealability of an order is determined, not by its form or the name given to it by the trial court, but rather by its substance and effect."[13] Here, the December 22, 2015 order found that the mother and stepfather had failed to appear in court with the ward as required and ordered their immediate incarceration. The order did not, however, decide the penalty for the parties' failure to appear as directed.

Pretermitting whether the December 22, 2015 order constituted a bench warrant to secure the appearance of the mother or a directly appealable contempt order, this appeal is moot. The mother has been released from custody for her actions in this case, no additional punishment was imposed by the instant court for her failure to appear as directed in the December 21, 2015 order, and, pursuant to the trial court's subsequent order dismissing any contempt finding, the December 22, 2015 order no longer subjects the mother to jeopardy. Therefore, we dismiss this appeal.[14]

a contempt hearing is erroneous).

[13] (Punctuation omitted.) *American Med. Security Group, Inc.*, 284 Ga. at 104 (4), quoting *First Christ Holiness Church, Inc. v. Owens Temple First Christ Holiness Church, Inc.*, 282 Ga. 883, 885 (655 SE2d 605) (2008).

[14] See OCGA § 5-6-48 (b) (3) (an appeal shall be dismissed "[w]here the questions presented have become moot"); *Higdon v. Higdon*, 321 Ga. App. 260, 265-266 (2) (739 SE2d 498) (2013) (appeal moot where "there is nothing for this Court

9

*Case No. A16A1202*

3. For the same reasons set forth in Division 1, the stepfather's appeal of the superior court's December 21, 2015 order is dismissed.

*Case No. A16A1203*

4. For the same reasons set forth in Division 2, the stepfather's appeal of the superior court's December 22, 2015 order is dismissed as moot.[15]

*Appeals dismissed. Andrews, P. J. and Ray, J., concur.*

---

to review, because the activity sought to be enjoined has already ceased") (punctuation omitted); *Cagle v. PMC Dev. Co.*, 233 Ga. 583, 584 (212 SE2d 765) (1975) (appeal from an order holding the appellant in contempt for trespass was dismissed as moot because "once a contempt judgment has been complied with, or has been vacated, or has been rendered moot in any other manner, there is no remaining case or controversy for adjudication in the appellate court"); *Brochin v. Brochin*, 294 Ga. App. 406, 407 (1) (669 SE2d 203) (2008).

[15] As aforementioned, the stepfather was released the same day he was taken into custody after he agreed to make a good faith effort to assist law enforcement in locating the mother and the ward.