**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 6, 2019**

# In the Court of Appeals of Georgia

A18A2101. GRAILER v. JONES.                                    DO-077

DOYLE, Presiding Judge.

Following their divorce, Christy Grailer ("the mother") and Shanon Jones ("the father") share joint legal custody of their minor child, N. J. In their second appearance before this Court,[1] the mother appeals three 2018 orders by the Juvenile Court of Gwinnett County dismissing her modification petition, granting the father's modification petition and granting him physical custody of N. J., denying her contempt motion, granting the father's motions for contempt, ordering her to pay child support, and awarding attorney fees to the father. For the reasons that follow,

---

[1] See *Grailer v. Jones*, Case No. A16A0520, unreported decision entered June 8, 2016.

we affirm in part, reverse in part, vacate in part, and remand the case for further proceedings.

This case has a protracted procedural history. The record shows that N. J. was born on July 21, 2002. The parties divorced in 2010, and pursuant to a settlement agreement, the judgment granted them joint physical and joint legal custody of N. J., with each parent having him half of the time. In August 2010, the father filed a modification petition, and the superior court entered an order in January 2011, again granting the parties joint physical and legal custody, with each party having alternating weekly physical custody. In July 2011, the mother filed a custody modification action, which the superior court dismissed, finding that there was no material change in circumstances. In January 2014, the father filed a petition to modify custody, attaching thereto an affidavit by N. J. in which he elected to live with the father. The following month, the mother filed an affidavit by N. J. in which he elected to live with the mother. The case was transferred to juvenile court, and in November 2014, the juvenile court entered an order granting the parties joint legal custody, but granting primary physical custody to the father and granting the mother visitation every other weekend and alternating Wednesdays.[2] The juvenile court

_____

[2] The court also required the mother to pay the father $261 per month in child support.

2

denied the mother's subsequent motion for new trial, and the mother appealed. In March 2016, the mother filed a petition for modification of custody; the father moved to dismiss the petition, arguing that the trial court lacked jurisdiction because the previous modification order was still on appeal, and the trial court granted the dismissal. In June 2016, in an unpublished opinion, this Court affirmed the denial of the mother's motion for new trial, vacated the award of attorney fees to the father because the juvenile court did not specify the basis therefor, and remanded the case for reconsideration of the attorney fee issue.

On June 29, 2016, the mother filed in superior court her third petition for modification, attaching thereto an affidavit from N. J. electing to live with her. On July 7, 2016, the superior court transferred the case to juvenile court. On July 26, 2016, the juvenile court appointed a guardian ad litem ("GAL"). In his July 27, 2016 answer to the mother's modification petition, the father filed a counterclaim for modification of custody, requesting to eliminate the mother's Wednesday night visitation to reduce the number of times N. J. was exchanged; the father also sought an award of attorney fees under OCGA §§ 19-9-3 (g) and 9-15-14. On August 2, 2016, the juvenile court held a temporary hearing, and the court spoke with N. J. in chambers; at the conclusion of the hearing, the juvenile court apparently orally

3

announced its ruling. On August 12, 2016, the father filed a motion for contempt, alleging that on three separate occasions the mother withheld N. J. from the father's visitation as orally ordered by the juvenile court at the August 2, 2016 hearing. On August 25, 2016, nunc pro tunc to August 2, 2016, the juvenile court entered a temporary order transferring temporary primary physical custody of N. J. to the mother and giving the father visitation every other Thursday through Monday.

On August 26, 2016, after again speaking with N. J. in chambers, the juvenile court entered an emergency order finding the mother in willful contempt of the November 2014 order and its August 2, 2016 oral pronouncement by failing to return N. J. to his father on three separate occasions following her visitation.[3] Thereafter, on August 12, 2016, and November 7, 2017, the father filed contempt motions alleging that the mother had interfered with his custody and/or visitation.[4]

---

[3] The order stated: "To purge herself from this contempt[,] the [m]other is ordered to be incarcerated in the Gwinnett County Detention Center for a period of ten days beginning August 26, 2016[,] at 8:00 a.m. Said incarceration shall be *suspended* should the minor child restart his visitation with his [f]ather on . . . August 25, 2016[,] at 3:00 p.m." (Emphasis in original.)

[4] On October 6, 2016, the father filed a motion for contempt alleging that the mother had failed to comply with the juvenile court's September 6, 2016 order for attorney fees, which was entered following remand from this Court.

On November 13-17, 2017, the juvenile court conducted a hearing on the parties' motions, at which both parents and N. J. testified. After the mother rested her case, the father made an oral motion to dismiss her modification petition on the basis that she had withheld custody from him in violation of custody orders, citing OCGA § 19-9-24. The juvenile court orally granted the motion, stating: "There has been constant withholding of visitation. It started with N. J. didn't want to go, so I couldn't make him, and now it's N. J.'s afraid, and I can't make him. You are not in control of N. J., obviously, and all of the claims against [the father] have been unsubstantiated, so the motion is granted."

On January 18, 2018, the father filed a contempt motion alleging that the mother had interfered with his visitation on January 15, 2018, by retrieving N. J. from the father's home at 10:30 p.m. On January 19, 2018, the mother filed a petition for a family violence ex parte temporary protection order ("TPO"); the superior court dismissed the petition because the mother elected not to go forward with it.

On January 31, 2018, the juvenile court entered a final order after considering the evidence, argument of counsel, and the recommendation of the GAL.[5] The court

---

[5] The recommendation of the GAL is neither contained in the record nor summarized in the orders or briefs on appeal.

stated that it dismissed the mother's motions for custody modification and for contempt because she withheld N. J. from the father "over [35] times after the filing of her [c]omplaint, including withholding [N. J.] at the time of trial. Notwithstanding that, the [c]ourt finds that although the child has made an election to be in the custody of his mother[,] it would not be in his best interest to effect that election."[6] The court then found that: the mother had withheld visitation; three reports made to the Department of Children and Family Services about alleged abuse by the father were "all unsubstantiated"; her allegation that the father had withheld medication from N. J. was not credible; she had eliminated the father from any involvement in decision-making about N. J., including putting him on medication; and "the child's election has been influenced by his mother's seven[-]year war against the father[,] is not independent or wise[,] and certainly [is] not in his best interest." Finding a change in material circumstances as set forth in OCGA § 19-9-3, the juvenile court granted the father's counterclaim, modifying the November 26, 2014 and September 7, 2016 orders by incorporating a parenting plan that the mother was directed to prepare in accordance with the recommendations of the GAL. The parenting plan, which was entered on February 14, 2018, gave the father primary physical custody, granted the

---

[6] (Emphasis omitted.)

6

mother visitation every other weekend, certain times in the summer and on holidays, and eliminated midweek visitation. The court also required the mother to pay $476 per month in child support, adopting the father's child support addendum. Finally, the court awarded the father attorney fees in the amount of $7,500 pursuant to OCGA §§ 19-9-3 (g) and 9-15-14 (b).

On February 9, 2018, the mother filed her second petition for a family violence TRO in superior court. The superior court granted the petition, issuing a TRO awarding her custody, and N. J. was removed from the father's custody. On February 12, 2018, the father filed a contempt motion in juvenile court, alleging that the mother had interfered with his custody by obtaining the TRO in superior court. On February 13, 2018, the mother filed a notice of appeal of the juvenile court's January 31, 2018 final order modifying custody. On February 14, 2018, the mother filed an intent to seek review of the contempt order and automatic supersedeas.

On February 20, 2018, following a hearing at which the father, his attorney, the mother's attorney, and the GAL were present,[7] the juvenile court entered an order on the father's January 18, 2018 and February 12, 2018 contempt motions, finding the mother in willful contempt for interfering with the father's custody on January 15,

_____

[7] The mother did not attend the hearing.

7

2018; it did not find her in contempt for obtaining the TRO. The court determined that the mother's February 9, 2018 petition for a TRO was based on the same allegations made during the November 2017 trial, and it vacated the TRO. The court ordered the mother to pay $5,870 in attorney fees to the father pursuant to OCGA § 19-6-2 and ordered the mother's immediate incarceration for 15 days or until she paid the attorney fees. On February 20, 2018, the mother filed an amended notice of appeal indicating her intention also to appeal the court's February 20, 2018 contempt order. On February 21, 2018, the juvenile court entered an amended order on the father's contempt motion, reinstating the TPO so that the magistrate judge sitting by designation for the superior court could preside over the TPO matter. On February 26, 2018, the mother filed her second amended notice of appeal, indicating her intention to also appeal the February 21, 2018 order. Finally, on March 28, 2018, the juvenile court withdrew the incarceration order.

1. The mother contends that the juvenile court erred by dismissing her modification petition pursuant to OCGA § 19-9-24. We disagree.

OCGA § 19-9-24 provides in relevant part:

(a) A physical custodian shall not be allowed to maintain against the legal custodian any action for . . . child custody, . . . change of child

8

custody, or change of visitation rights or any application for contempt of court so long as custody of the child is withheld from the legal custodian in violation of the custody order.

(b) A legal custodian shall not be allowed to maintain any action for . . . child custody, . . . change of child custody, or change of visitation rights or any application for contempt of court so long as visitation rights are withheld in violation of the custody order.

The mother contends that OCGA § 19-9-24 involves subject matter jurisdiction, which is an affirmative defense that must be asserted in either a responsive pleading or by separate motion. The mother argues that the father has waived his right to seek dismissal of her modification petition by failing to assert a lack of subject matter jurisdiction in his responsive pleadings or in a written motion. This argument is without merit. The mother has not cited any legal authority to support her contention that a parent must assert in writing his right to dismissal under OCGA § 19-9-4 before the custody hearing. And the Code section imposes no such requirement.

The trial court's finding that the mother had withheld visitation was supported by the record.[8] And contrary to her argument on appeal, the mother's testimony that N. J. did not wish to visit with the father is unpersuasive.

> The fact that a child of 14 can select his . . . custodial parent, does not require the conclusion that such a child can be allowed to elect to not visit with the noncustodial parent. . . . [Fourteen]-year-olds do have the right to elect not to visit with their noncustodial parents; however, to allow them to make such election without a court order would violate . . . statutory provisions [regarding modification and custody] and would permit, if not encourage, custodial parents to vent their spite for their former mates by pressuring, directly or indirectly, the children to make such an election.[9]

Accordingly, the juvenile court did not err by dismissing the mother's modification petition pursuant to OCGA § 19-9-24.[10]

Furthermore, the juvenile court also found that notwithstanding the father's right to dismissal of the petition, it was not in N. J.'s best interests to effect his

---

[8] The father presented evidence that the mother withheld visitation from him on N. J.'s birthday in July 2016; in August 2016; in March 2017; and in November 2017.

[9] *Prater v. Wheeler*, 253 Ga. 649, 650-651 (322 SE2d 892) (1984).

[10] See *Avren v. Garten*, 289 Ga. 186, 187 (2) (710 SE2d 130) (2011).

election to be in his mother's custody. And as we explain in Division 2, this finding was supported by the record.

2. The mother argues that the juvenile court erred by failing to honor N. J.'s affidavit of election to live with her and granting physical custody to the father. Again, we disagree.

"A trial court faced with a petition for modification of child custody is charged with exercising its discretion to determine what is in the child's best interest."[11] If

> the trial court has exercised its discretion and awarded custody of children to one fit parent over the other fit parent, an appellate court will not interfere with that decision unless the evidence shows the trial court clearly abused its discretion. [If,] as here[,] there is evidence to support the decision of the trial court, an appellate court cannot say there was an abuse of discretion.[12]

OCGA § 19-9-3 (a) (5) provides:

In all custody cases in which the child has reached the age of 14 years, the child shall have the right to select the parent with whom he . . .

---

[11] *Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012). See also OCGA § 19-9-3 (a) (2).

[12] (Punctuation omitted.) *Phillips v. Phillips*, 347 Ga. App. 524, 527 (2) ( ___ SE2d ___ ) (2018), quoting *McLendon v. McLendon*, 297 Ga. 779, 780-781 (3) (778 SE2d 213) (2015).

desires to live. The child's selection for purposes of custody shall be presumptive unless the parent so selected is determined not to be in the best interests of the child. The parental selection by a child who has reached the age of 14 may, in and of itself, constitute a material change of condition or circumstance in any action seeking a modification or change in the custody of that child; provided, however, that such selection may only be made once within a period of two years from the date of the previous selection and the best interests of the child standard shall apply.

Here, the juvenile court found that N. J's election to be in the custody of his mother "has been influenced by his mother's seven[-]year war against the father[,] is not independent or wise[,] and certainly [is] not in his best interest."[13] The court based its conclusion on evidence that the mother had withheld visitation, reports made to DFCS about the father were unsubstantiated, her allegation that the father had withheld medication from N. J. was not credible, and she had eliminated the father from involvement in decision-making about N. J. And although the mother and N. J. testified that the father was abusive to N. J. and made him uncomfortable by talking about suicide and displaying guns, the father disputed those allegations. Furthermore,

---

[13] (Emphasis omitted.)

because the GAL's recommendation is not in the record, we must presume that it supports the decision of the juvenile court.[14]

> The task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility. We do not second-guess the trial court in this regard when, as here, there is any reasonable evidence to support the decision.[15]

"Based on the evidence presented at the hearing[] and the [juvenile] court's consideration of [N. J.'s] best interest, we cannot say that the [juvenile] court abused

---

[14] The index for the hearing transcript states that the GAL's recommendation "was submitted by brief." According to the clerk of the juvenile court, the GAL emailed her recommendation to the juvenile judge; it was not filed below and is not in the record on appeal. "'Appellants have the burden of showing error affirmatively by the record.'" *Huff v. Vallejo*, 347 Ga. App. 127, 130 (817 SE2d 696) (2018). See also *Stegeman v. Heritage Bank*, 304 Ga. App. 172, 174 (1) (695 SE2d 340) (2010), citing *Addison v. Reece*, 263 Ga. 631, 633 (4) (436 SE2d 663) (1993) ("'The burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f).'"). We note that the parenting plan prepared by the mother in accordance with the recommendation of the GAL granted physical custody to the father.

[15] (Citations and punctuation omitted.) *Sadler v. Rigsby*, 343 Ga. App. 269, 272 (1) (c) (808 SE2d 11) (2017).

its discretion [by granting] the father's petition to change custody, despite [N. J.'s] election to live with his [mother]."[16]

3. Next, the mother contends that the juvenile court abused its discretion by finding her in contempt for interfering with the father's visitation. As we concluded in Division 1, the record supports the trial court's finding that the mother withheld and interfered with visitation. And the mother's argument that she was not in contempt because N. J. refused to visit with his father is unpersuasive.[17]

4. The mother also argues that the juvenile court erred by modifying her child support obligation because the father never sought a modification, he failed to demonstrate a substantial change in the parents' income or financial status, and the juvenile court failed to specify in the order the basis for modification.

OCGA § 19-6-15 (k), which governs modification of child support awards, contemplates the filing of a petition. Here, neither party filed a written pleading seeking a modification of child support.[18] Pretermitting, however, whether the father's

---

[16] *Driver v. Sene*, 327 Ga. App. 275, 278 (1) (758 SE2d 613) (201I).

[17] See *Prater,* 253 Ga. at 650.

[18] In the consolidated pretrial order, the mother indicated that she was seeking support and custody; the father indicated only that he sought to maintain the current custodial arrangement.

14

failure to file a petition to modify the child support award precludes a modification increasing the mother's child support obligation to him,[19] the portion of the juvenile's court's order modifying child support must be reversed because it did not comply with OCGA § 19-6-15 (k).

Pursuant to OCGA § 19-6-15 (k) (4), a trial court modifying child support "shall enter a written order specifying the basis for the modification, if any, and shall include all of the information set forth in paragraph (2) of subsection (c) of this Code section [concerning the use of a child support worksheet]."

Here, although it did not specifically state that it was modifying the child support, the order did just that.[20] Neither the order nor the addendum listed the basis

[19] See *Lawrence v. Day*, 247 Ga. 474, 475 (277 SE2d 35) (1981) (reversing a sua sponte upward revision of child support in a custody modification proceeding because no petition for modification of child support was filed, no modification was requested, and there was no evidence to support a finding of change in the father's income). But see *Jackson v. Sanders*, 333 Ga. App. 544, 547 n.7 (773 SE2d 835) (2015) (affirming upward modification of child support notwithstanding the father's failure to file a counterclaim for such because he sought a modification in the pretrial order and the parties litigated the issue at trial without objection).

[20] The November 26, 2014 order required the mother to pay the father $261 per month in child support based upon a child support addendum, which was not included in the record on appeal. In October 2016, the mother filed a motion to suspend her child support obligation following the court's August 2, 2016 order transferring custody of N. J. to her on a temporary basis, and the trial court granted that motion on December 28, 2016. The January 31, 2018 order appealed in this case required her

for the modification, reflected a finding that the juvenile court found a substantial change in either the parents' income or financial status or the needs of N. J., or stated whether the modification was in N. J.'s best interest.[21] Accordingly, we vacate that portion of the juvenile court's order addressing child support.[22]

5. Next, the mother argues that the juvenile court erred by awarding the father attorney fees under OCGA § 9-15-14 (b) in the January 31, 2018 order because (a) he did not file a separate motion for the fees, instead seeking them in a counterclaim; (b) no detailed billing records were presented and no evidentiary hearing was held;

---

to pay the father $476 per month in child support.

[21] The order states that "the [mother] shall pay child support to the [father] as indicated in the child support addendum for the support, care, and maintenance of the minor child. The [c]ourt adopts the [father's] child support addendum." The addendum, which stated that it was "issued as a final order in a modification action," listed the parties' gross income, indicated that the father had N. J. 25 percent of the time annually, and concluded that the amount of child support as indicated by the child support worksheet was $476 per month.

[22] See *Wetherington v. Wetherington*, 291 Ga. 722, 728 (2) (c) (732 SE2d 433) (2012) (reversing child support award because "the trial court erred [by] failing to determine whether there had been a change in [h]usband's financial circumstances since the original child support award that would warrant a modification of child support pursuant to OCGA § 19-6-15"); *Wright v. Burch*, 331 Ga. App. 839, 844-845 (1) (d) (771 SE2d 490) (2015) (vacating the portion of the order modifying child support because the trial court failed to follow the procedures set forth in OCGA § 19-6-15 (k)).

16

and (c) the court failed to specify the conduct justifying the award or to apportion the award between OCGA § 9-15-14 (b) and OCGA § 19-9-3 (g). Pretermitting whether the father's failure to file a separate motion for fees under OCGA § 9-15-14 or the juvenile court's failure to hold an evidentiary hearing preclude the award, the court's failure to include the necessary factual findings or the statutory basis for the award requires that it be vacated.

As we concluded in our unpublished opinion in the first appearance of this case in this Court, if

> there is more than one statutory basis for the attorney-fee award and neither the statutory basis for the award nor the findings necessary to support an award is stated in the order and a review of the record does not reveal the basis of the award, the case is remanded for an explanation of the statutory basis for the award and the entry of any findings necessary to support it.[23]

Furthermore, "[w]hen a trial court exercises its discretion in assessing attorney fees and costs of litigation under OCGA § 9-15-14, it is incumbent upon the court to specify the conduct upon which the award is made. A judgment devoid of such

---

[23] *Viskup*, 291 Ga. at 106 (2).

findings must be vacated[,] and the case must be remanded for reconsideration."[24]

Accordingly, we vacate the January 31, 2018 attorney fee award and remand the case for reconsideration consistent with this opinion.

6. Next, the mother argues that the juvenile court erred by entering the February 20, 2018 order incarcerating her for contempt and making the payment of attorney fees a condition for purging the contempt because the order is ambiguous and failed to allow her a reasonable time to pay the fees. But the juvenile court withdrew the incarceration order on March 28, 2018. Thus, this enumeration is moot.[25]

---

[24] (Punctuation omitted.) *Panhandle Fire Protection, Inc. v. Batson Cook Co.*, 288 Ga. App. 194, 199 (2) (653 SE2d 802) (2007), quoting *McKemie v. City of Griffin*, 272 Ga. 843, 844-845 (4) (537 SE2d 66) (2000).

[25] See OCGA § 5-6-48 (b) (3) (providing for the dismissal of an appeal if "the questions presented have become moot"); *Ruemker v. Ruemker*, 339 Ga. App. 680, 684 (2) (792 SE2d 727) (2016) (dismissing appeal of an incarceration order based on the mother's failure to appear because "[t]he mother has been released from custody for her actions in this case, no additional punishment was imposed . . . for her failure to appear . . . , and, pursuant to the trial court's subsequent order dismissing any contempt finding, the [incarceration] order no longer subjects the mother to jeopardy"); *Cagle v. PMC Dev. Co. of Ga.*, 233 Ga. 583, 584 (212 SE2d 765) (1975) (dismissing as moot the appeal of a contempt order because "once a contempt judgment has been complied with, or has been vacated, or has been rendered moot in any other manner, there is no remaining case or controversy for adjudication in the appellate court").

7. Finally, the mother contends that the juvenile court erred by awarding the father attorney fees pursuant to OCGA § 19-6-2 (a) in its February 20, 2018 contempt order. We agree.

Under OCGA § 19-6-2 (a), a trial court may award

> attorney's fees as a part of the expenses of litigation, made at any time during the pendency of the litigation, whether the action is for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case, including but not limited to contempt of court orders involving property division, child custody, and child visitation rights.

"OCGA § 19-6-2 (a) does not apply to a petition for modification of child custody . . . or to contempt proceedings unless the allegations are for failure to comply with the *original* alimony or divorce decree."[26]

Here, in the February 20, 2018 order, the trial court found that the mother was in contempt for violating a custody order entered subsequent to the original decree. Thus, the father is not entitled to attorney fees based on OCGA § 19-6-2.[27]

---

[26] (Citation and punctuation omitted; emphasis in original.) *Moore v. Hullander*, 345 Ga. App. 568, 571 (2) (a) (814 SE2d 423) (2018), quoting *Cothran v. Mehosky*, 286 Ga. App. 640, 642 (649 SE2d 838) (2007). See also *Hall v. Hall*, 335 Ga. App. 208, 211-212 (2) (780 SE2d 787) (2015).

[27] See *Hall*, 335 Ga. App. at 202 (2).

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded with direction. Dillard, C. J., and Mercier, J., concur.*