**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 9, 2019**

# In the Court of Appeals of Georgia

A19A0808. BELKNAP v. BELKNAP.

DILLARD, Presiding Judge.

In 2011, Terry and Michelle Belknap divorced, and Michelle obtained primary custody of their two minor sons. Six years later, Terry filed a petition to modify custody and child support, seeking primary custody of the younger son on the ground that the child—who was now 14 years old—wanted to live with him. Michelle filed a response, and the trial court held a hearing, after which it denied the petition. On appeal, Terry argues that the trial court abused its discretion by misapplying the relevant statute, failing to modify child support, and granting Michelle's motion to compel discovery responses. For the reasons set forth *infra,* we affirm.

In considering the appeal of a child-custody decision, we view the evidence "in the light most favorable to the trial court's decision."[1] Importantly, a petition to change child custody should be granted only if "the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award."[2] And if there has been such a material change, the court should "base its new custody decision on the best interest of the child."[3] Finally, we review a trial court's custody decision for an abuse of discretion.[4]

---

[1] *Driver v. Sene*, 327 Ga. App. 275, 276 (758 SE2d 613) (2014); *see Mitcham v. Spry*, 300 Ga. App. 386, 386 (685 SE2d 374) (2009) (noting that when reviewing a child-custody decision, this Court views the evidence presented in the light most favorable to upholding the trial court's order).

[2] *Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012) (punctuation omitted); *accord Driver*, 327 Ga. App. at 276; *see* OCGA § 19-9-3 (b) (noting that "this subsection shall not limit or restrict the power of the judge to enter a judgment relating to the custody of a child in any new proceeding based upon a showing of a change in any material conditions or circumstances of a party or the child").

[3] *Viskup*, 291 Ga. at 105 (2) (punctuation omitted); *accord Driver*, 327 Ga. App. at 276; *see* OCGA § 19-9-3 (a) (2) ("The duty of the judge in all [custody] cases shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness and to make his or her award accordingly.").

[4] *Driver*, 327 Ga. App. at 277.

So viewed, the evidence shows that after Terry and Michelle divorced in 2011, Michelle obtained primary custody of their two minor sons, M. B. (born in 2001) and C. B. (born in 2003), and Terry retained a significant amount of parenting time. Nevertheless, after the divorce, Terry moved to Florida, while Michelle and the boys remained in the Atlanta area. But in April 2017, C. B.—who was now 14 years old—asked his father if he could move to Florida to live with him. As a result, on November 1, 2017, Terry filed a petition for modification of custody and child support in the Superior Court of DeKalb County. In doing so, Terry sought primary custody of C. B. based on his son's election to live with him, as well as an adjustment in his child-support obligations. And with the petition, Terry also filed an affidavit, in which C. B. stated his desire to live with his father in Florida.

Initially proceeding *pro se*, Michelle filed a response contesting Terry's petition and, shortly thereafter, served him with interrogatories and requests for production of documents. A little more than one month later, Michelle—now represented by counsel—sent Terry's counsel a letter, under Uniform Superior Court Rule 6.4 (B), seeking responses to her discovery requests that she claimed had been

ignored or insufficiently answered.[5] At that time, Michelle also served Terry with additional discovery requests. Subsequently, Michelle filed a motion to compel discovery, apparently unsatisfied with Terry's response to her letter; and a few weeks later, she filed a second motion to compel. On April 18, 2018, the trial court held a hearing on Michelle's motions to compel. And at the conclusion of that hearing, the court ordered Terry to provide the requested documents, particularly those concerning his life insurance policy.[6] Nevertheless, the court reserved ruling on the issue of attorney fees related to the motions for the final hearing.

Subsequently, on June 21, 2018, the trial court conducted a final hearing on Terry's modification petition. And during that hearing, Terry testified regarding C.

---

[5] *See* Uniform Superior Court Rule 6.4 (B) ("Prior to filing a motion seeking resolution of a discovery dispute, counsel for the moving party shall confer with counsel for the opposing party and any objecting person or entity in a good faith effort to resolve the matters involved.").

[6] During the final hearing on Terry's petition, both parties mention the trial court's grant of Michelle's motion to compel. And in his appellate brief, Terry refers to the trial court's grant and the transcript of the hearing on Michelle's motion (at which the grant occurred). But it appears that the trial court orally granted the motion and did not reduce it to a written order. Indeed, the record does not include a written order granting Michelle's motion to compel. Furthermore, Terry's notice of appeal, while requesting that the transcript of the June 21, 2018 final hearing be included in the record, did not request the transcript of the April 18, 2018 motion-to-compel hearing.

B.'s desire to live with him, and both he and his fiancee further testified as to why they believed the petition should be granted. In contrast, Michelle testified that she believed it was in C. B.'s best interest for her to retain primary custody. At the conclusion of the hearing, the trial court agreed with Michelle and denied Terry's petition. In addition, the court denied both parties' requests for attorney fees. Approximately one month later, the court issued a written order memorializing its rulings. This appeal follows.

1. In his first two enumerations of error, Terry essentially contends that the trial court erred in denying his petition to modify custody.[7] Specifically, he argues that the court misapplied OCGA § 19-9-3 (a) (5) by failing to honor his son's election to live with him despite finding him to be a fit parent. We disagree.

Determining whether the trial court misapplied OCGA § 19-9-3 (a) (5), of course, requires an examination of the relevant statutory text. So, tasked with interpreting statutory language, we necessarily begin our analysis with "familiar and

___

[7] In his enumeration of errors, Terry separately lists the trial court's failure to honor his son's election and its alleged misapplication of the applicable statute. But his brief addresses these issues together, and because they are inextricably linked, we do so as well.

5

binding canons of construction."[8] First and foremost, in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[9] And toward that end, we must afford the statutory text its plain and ordinary meaning,[10] consider the text contextually,[11] read

---

[8] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *accord Flanders v. Jackson*, 344 Ga. App. 493, 495 (1) (810 SE2d 656) (2018); *In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014).

[9] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation omitted); *accord Flanders*, 344 Ga. App. at 495 (1); *Holcomb*, 329 Ga. App. at 517 (1); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[10] *Deal*, 294 Ga. at 172 (1) (a); *accord Flanders*, 344 Ga. App. at 495-96 (1); *Holcomb*, 329 Ga. App. at 517 (1); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) ("A statute draws it meaning, of course, from its text." (punctuation and citation omitted)); *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015) (same); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . ."); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning. . . ." (punctuation omitted)).

[11] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 10 (II) (B) (133 SCt. 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also Tibbles*, 297 Ga. at 558 (1) ("The common and customary usages of the words are important, but so is their context." (punctuation and citation omitted)); *Scherr v. Marriott Int'l, Inc.*, 703 F3d 1069, 1077 (II) (C) (2)

6

the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[12] and seek to "avoid a construction that makes some language mere surplusage."[13] In summary, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[14]

Turning to the statute at issue, OCGA § 19-9-3 (a) (5) provides:

> In all custody cases in which the child has reached the age of 14 years, the child shall have the right to select the parent with whom he or she desires to live. The child's selection for purposes of custody shall be presumptive unless the parent so selected is determined not to be in the best interests of the child. The parental selection by a child who has reached the age of 14 may, in and of itself, constitute a material change of condition or circumstance in any action seeking a modification or

---

(7th Cir. 2013) (Manion, J.) (noting that in statutory construction cases, courts "begin with the language of the statute itself and the specific context in which that language is used." (punctuation and citation omitted)).

[12] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Holcomb*, 329 Ga. App. at 518 (1).

[13] *In the Interest of L.T.*, 325 Ga. App. at 592 (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1).

[14] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013); *see also Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

change in the custody of that child; provided, however, that such selection may only be made once within a period of two years from the date of the previous selection and the best interests of the child standard shall apply.

And here, following the final hearing, the trial court considered C. B.'s affidavit stating his desire to live with his father, as well as Terry's testimony as to his son's reasons for the decision. But the trial court ultimately agreed with Michelle that it was in C. B.'s best interest to continue living with her, where he would (1) be close to his older brother and grandparents, (2) continue attending the school at which he was doing well, and (3) continue participating in the extra-curricular activities that he enjoyed.

Nonetheless, Terry maintains the trial court misapplied OCGA § 19-9-3 (a) (5) by not honoring his son's election to live with him despite finding him to be a fit parent. But this contention is belied by the plain language of the statute. Neither the term "fit" nor "unfit" appear anywhere in the text of OCGA § 19-9-3, much less in subsection (a) (5). To be sure, prior to the amendment of the statute in 2007 (which became effective in January 2008), it provided that "the right of a child 14 or older to select the parent with whom he wanted to live was controlling 'unless the parent so selected [was] determined not to be a fit and proper person to have the custody of

the child.'"[15] And under the current version of the statute, the election of a child 14 or older to live with one parent over the other is presumptive; but the superior court "may override the election if it determines that placing the child in the custody of the selected parent is not in the child's best interest."[16] That is exactly what occurred

---

[15] *Driver*, 327 Ga. App. at 277 (1); *see* OCGA § 19-9-3 (a) (4) (2007); Ga. L. 2007, pp. 554, 564, § 5.

[16] *Driver*, 327 Ga. App. at 277 (1); *see* OCGA § 19-9-3 (a) (5); *Woodruff v. Choate*, 334 Ga. App. 574, 580 (2) (b) (780 SE2d 25) (2015) ("Although the child's election is presumptive, it is not conclusive and the trial court must still consider the child's best interest."); *Murillo v. Murillo*, 300 Ga. App. 61, 65 (684 SE2d 126) (2009) (noting that under the amended version of OCGA § 19-9-3 (a) (5), "fitness as a parent was no longer the controlling custody issue"); *see generally Nuci Phillips Mem'l Found, Inc. v. Athens Clark Cty. Bd. of Tax Assessors*, 288 Ga. 380, 383 (1) (703 SE2d 648) (2010) ("All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. Furthermore, when a statute is amended, from the addition of words it may be presumed that the legislature intended some change in the existing law." (punctuation and citation omitted)). In support of his argument, Terry cites *Edler v. Hedden*, 344 Ga. App. 628 (811 SE2d 434) (2018), which—after correctly citing the text of the current version of OCGA § 19-9-3 (a) (5)—quotes *Harbin v. Harbin*, 238 Ga. 109, 110 (230 SE2d 889) (1976), for the proposition that "[w]ithout a finding of unfitness the child's selection must be recognized and the court has no discretion to act otherwise." *Edler*, 344 Ga. App. at 628. But *Harbin* was decided long before OCGA § 19-9-3 (a) (5) was amended and, thus, does not entail any analysis of the statute's current language. Moreover, given that one of the members of the *Edler* panel concurred in judgment only, the opinion is physical precedent only. *See* Court of Appeals Rule 33.2 (a) (1) ("An opinion is physical precedent only (citable as persuasive, but not binding, authority) . . . with respect to any portion of the published opinion in which any of the panel judges concur in the judgment only, concur specially without a statement of agreement with all that is said in the majority

here. The trial court found that maintaining the continuity in C. B.'s life, which remaining with his mother entailed, was in his best interest.[17] And given these circumstances, we cannot conclude the trial court abused its discretion in denying Terry's petition for modification of custody.[18]

2. Terry also contends that the trial court abused its discretion by failing to modify child support even though the needs of the children had materially changed. This contention likewise lacks merit.

In his petition for modification of custody and child support, Terry requests primary custody over C. B. based on his son's election to live with him and further

opinion, or dissent."). Thus, regardless of whether the reasoning contained in *Elder* is in tension with the current version of OCGA § 19-9-3 (a) (5), it is neither controlling nor persuasive.

[17] *See* OCGA § 19-9-3 (a) (3) (G) ("In determining the best interests of the child, the judge may consider any relevant factor including, but not limited to . . . [t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity[.]").

[18] *See Driver*, 327 Ga. App. at 277-78 (1) (affirming trial court's denial of father's petition to change custody when, despite child's election to live with father, the court found it was in the child's best interest to remain with his mother). *Cf. Grailer v. Jones*, 349 Ga. App. 625, 631-32 (2) (824 SE2d 118) (2019) (holding, based on the evidence presented at the hearing and the court's consideration of the child's best interest, the court did not abuse its discretion by granting the father's petition to change custody, despite child's election to live with his mother).

requests that the trial court "adjust child support in an amount that is compliant with the applicable child support statute." And during the final hearing, Terry's counsel opened her remarks by stating that the purpose of the hearing was her client's request for primary custody of C. B., and then added, "[o]f course, the child support is going to have to be adjusted in accordance with the child support statute." Then, after testifying about his desire to have C. B. live with him, Terry further testified that he and his attorney drafted two child-support worksheets, one of which contemplated C. B. living with him and his older son remaining with the mother. But notably, prior to the hearing, Terry filed *three* child-support worksheets, with the first two contemplating the scenarios mentioned in his testimony and the third contemplating a scenario in which the older son attained the age of 18 and C. B., again, would reside with his father.

After the close of the evidence, the trial court provided the following directive to both parties: "So first when you make your arguments, please lay out what you want me to do in relation to all the issues and then go into how you evaluate the evidence. I want each counsel to do that because it will make it easier for me. It gives me a roadmap of what we're trying to decide." Then, with regard to child support, Terry's counsel argued:

11

We're asking – I did two child support worksheets, one listing [Michelle] as the custodial parent for [the older son, M. B.] and the other listing my client as the custodial parent for [the younger son, C. B.]. Pursuant to those worksheets, my client will be ordered to pay child support for [M. B.] in the amount of $1,270 and [Michelle] will be ordered to pay my client $321 in support for [C. B.]. We are asking for income deduction, Your Honor. [M. B.] is going to be graduating from high school next year and he attains the age of 18 next year so he's going to be coming off of child support. My client wants to make sure that in the event [Michelle] has not complied to the court's order of child support, this is going to limit the probability of him having to come up and file a motion for contempt and defend that motion for contempt here in court. So that is another reason we're asking for income deduction order.

Shortly thereafter, the trial court orally denied Terry's petition, denied all requests for attorney fees, but made no reference to child support. And in its written order denying Terry's petition, the court was similarly silent on the issue of child support.

Terry now argues that the trial court abused its discretion by not modifying his child-support obligations despite evidence that the needs of the children had materially changed. But in both his petition for modification and argument during the final hearing, it appears Terry's request for a modification of child support was contingent upon the grant of his request for primary custody of C. B. In fact, although

12

Terry testified that the children were no longer attending private school, he only generally testified regarding two of the child-support worksheets, both of which contemplated C. B. living with him; and he failed to mention the third worksheet, which nonetheless also contemplated him having custody of C. B. Indeed, none of the child-support worksheets Terry filed reflect a scenario in which the older son attains the age of 18 years and C. B. remains with his mother. Furthermore, when explicitly asked by the court to detail the relief he was seeking, he did not specifically request a modification of child support even in the event his request for modification of custody was denied. But more importantly, even if we charitably construed Terry's mention of his older son's graduation and coming off child support during his final argument as him seeking modification of child support regardless of custody being sought for C. B., it was Terry's duty to obtain a ruling when the court was—as he

characterizes in his brief—silent on the issue.[19] And under these circumstances, Terry's failure to obtain such a ruling resulted in a waiver of the issue.[20]

3. Terry further contends that the trial court abused its discretion by granting Michelle's motion to compel discovery responses. Once again, we disagree.

In matters involving discovery disputes, a trial court has broad discretion in controlling discovery, "including the imposition of sanctions," and we will not "reverse a trial court's decision on such matters unless there has been a clear abuse of discretion."[21] Bearing that in mind, OCGA § 9-11-37 (a) (3) instructs the trial court that, as to depositions and discovery, "'an evasive or incomplete answer is to be treated as a failure to answer,' and OCGA § 9-11-37 (d) authorizes the court in such

---

[19] *See Erickson v. Bank of Am., N. A.*, 345 Ga. App. 254, 257 (2) (holding that it was the appellant's duty to invoke a final ruling, and her failure to do so precluded appellate review); *Leone v. Green Tree Servicing, LLC*, 311 Ga. App. 702, 705 (3) (716 SE2d 720) (2011) (holding that "[i]t is the duty of a litigant to obtain a ruling on his motions or objections" (punctuation omitted)).

[20] *See Erickson*, 345 Ga. App. at 257 (2) (holding that litigant waived issue by not obtaining a ruling from the trial court on same); *Leone*, 311 Ga. App. at 705 (3) (same).

[21] *Mincey v. Ga. Dep't of Comty Affairs*, 308 Ga. App. 740, 747 (2) (708 SE2d 644) (2011) (punctuation omitted).

14

an event to 'make such orders in regard to the failure as are just,' up to and including a dismissal of the plaintiff's complaint."[22]

Here, Michelle filed a motion to compel based on her contention that Terry failed to respond to several discovery requests, in particular, a request for production of documents relating to his life insurance policy. And after conducting a hearing on the matter, the trial court apparently ordered Terry to comply with Michelle's request. But it reserved ruling on the issue of attorney fees, and, at the conclusion of the final hearing, the court did not grant such fees to either party. Nonetheless, Terry now argues the trial court abused its discretion in granting Michelle's motion to compel, claiming, *inter alia*, that she failed to confer with him, in good faith, to resolve the dispute prior to filing her motion.[23] But contrary to Terry's claim, the record includes a good-faith letter from Michelle's counsel to Terry's counsel regarding the dispute, dated February 16, 2018.

Moreover, given the lack of any order in the record granting Michelle's motion to compel, it appears the trial court orally granted it during the hearing on the motion, as Terry states in his brief. But the transcript of that hearing is absent from the record,

---

[22] *Id.*

[23] *See supra* note 5 and accompanying text.

15

and this omission is the apparent result of Terry's failure to comply with OCGA § 5-6-37, which requires an appellant to specify in his notice of appeal "a designation of those portions of the record to be omitted from the record on appeal," as well as "whether or not any transcript of evidence and proceedings is to be transmitted as a part of the record on appeal." And here, while Terry's notice of appeal specifically requests inclusion of the transcript of the June 21, 2018 final hearing, it does not similarly request the transcript of the April 18, 2018 hearing on the motion to compel discovery responses.

It is well established that when the record is incomplete "as the result of an appellant's failure to comply with the requirements of OCGA § 5-6-37, the order of the trial court will be affirmed."[24] In fact, an affirmance is required under such circumstances because "on appeal the burden is on the appellant, as the party alleging error, to show affirmatively from the record that such error occurred."[25] And when the appellant fails to meet that burden, "we have no choice but to assume that the

---

[24] *Curry v. Miller*, 328 Ga. App. 564, 565 (763 SE2d 489) (2014); *see Quarterman v. Lee*, 291 Ga. App. 603, 603 (662 SE2d 234) (2008) (holding that when the transcript is necessary for review and appellant omits it from the record on appeal, the appellate court must assume the judgment below was correct and affirm).

[25] *Curry*, 328 Ga. App. at 565.

judgment complained of is correct and to therefore affirm the same."[26] Thus, because there is no written order granting Michelle's motion to compel, and given the absence of the hearing transcript, we cannot review the evidence or arguments presented below to assist our determination of whether the trial court abused its discretion in granting Michelle's motion to compel. Accordingly, we must presume that the trial court's ruling on that issue was correct and affirm its grant of Michelle's motion to compel.[27]

For all these reasons, we affirm the trial court's judgment.

*Judgment affirmed. Gobeil and Hodges, JJ., concur.*

---

[26] *Id.*

[27] *See id.* at 565-66 (holding that because appellant did not request inclusion of the entire transcript in the record but, rather, directed the clerk to include only "relevant" parts of the transcript, appellant failed to comply with OCGA § 5-6-37, and, thus, this Court was required to affirm trial court's ruling).